# PEEL *v.* ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION OF ILLINOIS

No. 88–1775.   Argued January 17, 1990—Decided June 4, 1990

92

STEVENS, J., announced the judgment of the Court and delivered an opinion, in which BRENNAN, BLACKMUN, and KENNEDY, JJ., joined. MARSHALL, J., filed an opinion concurring in the judgment, in which BRENNAN, J., joined, *post*, p. 111. WHITE, J., filed a dissenting opinion, *post*, p. 118. O'CONNOR, J., filed a dissenting opinion, in which REHNQUIST, C. J., and SCALIA, J., joined, *post*, p. 119.

*Bruce J. Ennis, Jr.*, argued the cause and filed briefs for petitioner.

*Stephen J. Marzen* argued the cause for the Federal Trade Commission as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Starr, Assistant Attorney General Rill, Deputy Solicitor General Merrill, Kevin J. Arquit, Jay C. Shaffer,* and *Ernest J. Isenstadt.*

*William F. Moran III* argued the cause for respondent. With him on the brief was *James J. Grogan.**

JUSTICE STEVENS announced the judgment of the Court and delivered an opinion, in which JUSTICE BRENNAN, JUSTICE BLACKMUN, and JUSTICE KENNEDY join.

The Illinois Supreme Court publicly censured petitioner because his letterhead states that he is certified as a civil trial specialist by the National Board of Trial Advocacy. We

---

*Briefs of *amici curiae* urging reversal were filed for the American Advertising Federation, Inc., by *Philip B. Kurland* and *Alan S. Madans;* for the Association of National Advertisers, Inc., by *Burt Neuborne;* for the Association of Trial Lawyers of America et al. by *Jeffrey Robert White* and *Russ M. Herman;* for Public Citizen by *David C. Vladeck* and *Alan B. Morrison;* and for the Washington Legal Foundation et al. by *Daniel J. Popeo, Paul D. Kamenar, Alan M. Slobodin,* and *Richard Samp.*

Briefs of *amici curiae* were filed for the Academy of Certified Trial Lawyers of Minnesota by *Clarance E. Hagglund;* and for the National Board of Trial Advocacy by *Timothy Wilton* and *Jacob D. Fuchsberg.*

granted certiorari to consider whether the statement on his letterhead is protected by the First Amendment. 492 U. S. 917 (1989).[1]

## I

This case comes to us against a background of growing interest in lawyer certification programs. In the 1973 Sonnett Memorial Lecture, then Chief Justice Warren E. Burger advanced the proposition that specialized training and certification of trial advocates is essential to the American system of justice.[2] That proposition was endorsed by a number of groups of lawyers[3] who were instrumental in establishing the National Board of Trial Advocacy (NBTA) in 1977.

---

[1] The First Amendment to the United States Constitution provides in part:

"Congress shall make no law . . . abridging the freedom of speech, or of the press . . . ."

If a statement may not be censored by the Federal Government, it is also protected from censorship by the State of Illinois. See *Cantwell* v. *Connecticut*, 310 U. S. 296 (1940); *Near* v. *Minnesota ex rel. Olson*, 283 U. S. 697 (1931).

[2] Burger, The Special Skills of Advocacy: Are Specialized Training and Certification of Advocates Essential to Our System of Justice? 42 Ford. L. Rev. 227 (1973) (recording the Fourth Annual John F. Sonnett Memorial Lecture delivered on November 26, 1973). The address warned that a lawyer is not qualified, "simply by virtue of admission to the bar, to be an advocate in trial courts in matters of serious consequence." *Id.*, at 240. Other proponents stress more positive reasons for certification such as the creation of "a powerful professional and economic incentive to increase [lawyers'] competence." Brief for Academy of Certified Trial Lawyers of Minnesota as *Amicus Curiae* 15.

[3] See Trial Advocacy as a Specialty: Final Report of the Annual Chief Justice Earl Warren Conference on Advocacy in the United States (sponsored by the Roscoe Pound-American Trial Lawyers Foundation) (1976).

The groups sponsoring NBTA include the National District Attorneys Association, the Association of Trial Lawyers of America, the International Academy of Trial Lawyers, the International Society of Barristers, the National Association of Criminal Defense Lawyers, the National Association of Women Lawyers, and the American Board of Professional Liability Attorneys.

Since then, NBTA has developed a set of standards and procedures for periodic certification of lawyers with experience and competence in trial work. Those standards, which have been approved by a board of judges, scholars, and practitioners, are objective and demanding. They require specified experience as lead counsel in both jury and nonjury trials, participation in approved programs of continuing legal education, a demonstration of writing skills, and the successful completion of a day-long examination. Certification expires in five years unless the lawyer again demonstrates his or her continuing qualification.[4]

NBTA certification has been described as a "highly-structured" and "arduous process that employs a wide range of assessment methods." Task Force on Lawyer Competence, Report With Findings and Recommendations to the Conference of Chief Justices, Publication No. NCSC-021, pp. 33–34 (May 26, 1982). After reviewing NBTA's procedures, the Supreme Court of Minnesota found that "NBTA applies a rigorous and exacting set of standards and examinations on a national scale before certifying a lawyer as a trial

---

[4] Brief for NBTA as *Amicus Curiae* 9–13. The current NBTA requirements are that an applicant: (1) be a bar member in good standing; (2) disclose any misconduct including criminal convictions or professional discipline; (3) show at least five years of actual practice in civil trial law during the period immediately preceding application for certification; (4) show substantial involvement in trial practice, including 30% of professional time in civil trial litigation during each of the five years preceding application; (5) demonstrate experience by appearing as lead counsel in at least 15 complete trials of civil matters to verdict or judgment, including at least 45 days of trial and 5 jury trials, and by appearing as lead counsel in 40 additional contested matters involving the taking of testimony; (6) participate in 45 hours of continuing legal education in civil trial practice in the three years preceding application; (7) be confidentially reviewed by six attorneys, including two against or with whom the applicant has tried a civil matter, and a judge before whom the applicant has appeared within the preceding two years; (8) provide a substantial trial court memorandum or brief that was submitted to a court in the preceding three years; and (9) pass a day-long written examination testing both procedural and substantive law in various areas of civil trial practice.

specialist." *In re Johnson*, 341 N. W. 2d 282, 283 (1983). The Alabama Supreme Court similarly concluded that "a certification of specialty by NBTA would indicate a level of expertise with regard to trial advocacy in excess of the level of expertise required for admission to the bar generally." *Ex parte Howell*, 487 So. 2d 848, 851 (1986).

## II

Petitioner practices law in Edwardsville, Illinois. He was licensed to practice in Illinois in 1968, in Arizona in 1979, and in Missouri in 1981. He has served as president of the Madison County Bar Association and has been active in both national and state bar association work.[5] He has tried to verdict over 100 jury trials and over 300 nonjury trials, and has participated in hundreds of other litigated matters that were settled. NBTA issued petitioner a "Certificate in Civil Trial Advocacy" in 1981, renewed it in 1986, and listed him in its 1985 Directory of "Certified Specialists and Board Members."[6]

Since 1983 petitioner's professional letterhead has contained a statement referring to his NBTA certification and to the three States in which he is licensed. It appears as follows:

"Gary E. Peel
  "Certified Civil Trial Specialist
  "By the National Board of Trial Advocacy
"Licensed: Illinois, Missouri, Arizona."[7]

---

[5] Petitioner has been vice chair of the Insurance and Tort Committee of the General Practice Session of the American Bar Association and an officer of the Tri-City Bar Association. He is a member of the Illinois State Bar Association, the Arizona State Bar Association, the Missouri State Bar Association, the Illinois Trial Lawyers Association, and the Association of Trial Lawyers of America. Hearing Tr., App. G to Pet. for Cert. 28a–29a.

[6] Report of the Hearing Panel, App. C to Pet. for Cert. 19a; App. 22–23.

[7] App. D to Pet. for Cert. 21a.

In 1987, the Administrator of the Attorney Registration and Disciplinary Commission of Illinois (Commission) filed a complaint alleging that petitioner, by use of this letterhead, was publicly holding himself out as a certified legal specialist in violation of Rule 2–105(a)(3) of the Illinois Code of Professional Responsibility. That Rule provides:

> "A lawyer or law firm may specify or designate any area or field of law in which he or its partners concentrates or limits his or its practice. Except as set forth in Rule 2–105(a), no lawyer may hold himself out as 'certified' or a 'specialist.'"[8]

The complaint also alleged violations of Rule 2–101(b), which requires that a lawyer's public "communication shall contain all information necessary to make the communication not misleading and shall not contain any false or misleading statement or otherwise operate to deceive," and of Rule 1–102 (a)(1), which generally subjects a lawyer to discipline for violation of any Rule of the Code of Professional Responsibility. Disciplinary Rules 2–101(b), 1–102(a)(1) (1988).

After a hearing, the Commission recommended censure for a violation of Rule 2–105(a)(3). It rejected petitioner's First Amendment claim that a reference to a lawyer's certification as a specialist was a form of commercial speech that could not

---

[8] Disciplinary Rule 2–105(a)(3) (1988). The exceptions are for patent, trademark, and admiralty lawyers. The remainder of Rule 2–105 provides:

"Rule 2–105. Limitation of Practice.

"(a) A lawyer shall not hold himself out publicly as a specialist, except as follows:

"(1) A lawyer admitted to practice before the United States Patent and Trademark Office may use the designation 'Patents,' 'Patent Attorney,' 'Patent Lawyer,' or 'Registered Patent Attorney' or any combination of those terms, on his letterhead and office sign.

"(2) A lawyer engaged in the trademark practice may use the designation 'Trademarks,' 'Trademark Attorney' or 'Trademark Lawyer,' or a combination of those terms, and a lawyer engaged in the admiralty practice may use the designation 'Admiralty,' 'Proctor in Admiralty' or 'Admiralty Lawyer,' or a combination of those terms, in any form of communication otherwise permitted under Rules 2–101 through 2–104."

be "'subjected to blanket suppression.'" Report of the Hearing Panel, App. C to Pet. for Cert. 19a. Although the Commission's "Findings of Facts" did not contain any statement as to whether petitioner's representation was deceptive, its "Conclusion of Law" ended with the brief statement that petitioner,

> "by holding himself out, on his letterhead as 'Gary E. Peel, Certified Civil Trial Specialist—By the National Board of Trial Advocacy,' is in direct violation of the above cited Rule [2–105(a)(3)].
>
> "We hold it is 'misleading' as our Supreme Court has never recognized or approved any certification process." *Id.*, at 20a.

The Illinois Supreme Court adopted the Commission's recommendation for censure. It held that the First Amendment did not protect petitioner's letterhead because the letterhead was misleading in three ways. First, the State Supreme Court concluded that the juxtaposition of the reference to petitioner as "certified" by NBTA and the reference to him as "licensed" by Illinois, Missouri, and Arizona "could" mislead the general public into a belief that petitioner's authority to practice in the field of trial advocacy was derived solely from NBTA certification. It thus found that the statements on the letterhead impinged on the court's exclusive authority to license its attorneys because they failed to distinguish voluntary certification by an unofficial group from licensure by an official organization. *In re Peel*, 126 Ill. 2d 397, 405–406, 534 N. E. 980, 983–984 (1989).

Second, the court characterized the claim of NBTA certification as "misleading because it tacitly attests to the qualifications of [petitioner] as a civil trial advocate." *Id.*, at 406, 534 N. E. 2d, at 984. The court noted confusion in the parties' descriptions of NBTA's requirements,[9] but did not

---

[9] 126 Ill. 2d, at 406–407, 534 N. E. 2d, at 984–985. The court noted some ambiguity and inconsistency in the descriptions of required trial experience: by petitioner as 40 jury trials carried to verdict, by *amicus* Association of Trial Lawyers of America as 15 major cases carried to verdict,

consider whether NBTA certification constituted reliable, verifiable evidence of petitioner's experience as a civil trial advocate. Rather, the court reasoned that the statement was tantamount to an implied claim of superiority of the quality of petitioner's legal services and therefore warranted restriction under our decision in *In re R. M. J.*, 455 U. S. 191 (1982). 126 Ill. 2d, at 406, 534 N. E. 2d, at 984.

Finally, the court reasoned that use of the term "specialist" was misleading because it incorrectly implied that Illinois had formally authorized certification of specialists in trial advocacy. The court concluded that the conjunction of the reference to being a specialist with the reference to being licensed implied that the former was the product of the latter. *Id.*, at 410, 534 N. E. 2d, at 986. Concluding that the letterhead was inherently misleading for these reasons, the court upheld the blanket prohibition of Rule 2–105(a) under the First Amendment.

## III

The Illinois Supreme Court considered petitioner's letterhead as a form of commercial speech governed by the "constitutional limitations on the regulation of lawyer advertising." 126 Ill. 2d, at 402, 534 N. E. 2d, at 982. The only use of the letterhead in the record is in petitioner's correspondence with the Commission itself. Petitioner contends that, absent evidence of any use of the letterhead to propose commercial transactions with potential clients, the statement should be accorded the full protections of noncommercial speech. However, he also acknowledges that "this case can and should be decided on the narrower ground that even if it is commercial speech it cannot be categorically prohibited." Tr. of Oral Arg. 9. We agree that the question to be decided

---

and by *amicus* NBTA as 15 complete trials to verdict, at least 5 of which were to a jury. Petitioner's brief to the state court did fail to report the newly revised standards provided by the *amici*, whose descriptions varied from each other's only in terminology. Brief for Petitioner 23, n. 26. All parties have provided the revised standards to this Court. See n. 4, *supra*.

is whether a lawyer has a constitutional right, under the standards applicable to commercial speech, to advertise his or her certification as a trial specialist by NBTA.

In *Bates* v. *State Bar of Arizona*, 433 U. S. 350 (1977), this Court decided that advertising by lawyers was a form of commercial speech entitled to protection by the First Amendment. Justice Powell summarized the standards applicable to such claims for the unanimous Court in *In re R. M. J.*, 455 U. S., at 203:

> "Truthful advertising related to lawful activities is entitled to the protections of the First Amendment. But when the particular content or method of the advertising suggests that it is inherently misleading or when experience has proved that in fact such advertising is subject to abuse, the States may impose appropriate restrictions. Misleading advertising may be prohibited entirely. *But the States may not place an absolute prohibition on certain types of potentially misleading information*, e. g., *a listing of areas of practice, if the information also may be presented in a way that is not deceptive.* . . .
>
> "Even when a communication is not misleading, the State retains some authority to regulate. But the State must assert a substantial interest and the interference with speech must be in proportion to the interest served." (Emphasis added.)

In this case we must consider whether petitioner's statement was misleading and, even if it was not, whether the potentially misleading character of such statements creates a state interest sufficiently substantial to justify a categorical ban on their use.

The facts stated on petitioner's letterhead are true and verifiable. It is undisputed that NBTA has certified petitioner as a civil trial specialist and that three States have licensed him to practice law. There is no contention that any

potential client or person was actually misled or deceived by petitioner's stationery. Neither the Commission nor the State Supreme Court made any factual finding of actual deception or misunderstanding, but rather concluded, as a matter of law, that petitioner's claims of being "certified" as a "specialist" were necessarily misleading absent an official state certification program. Notably, although petitioner was originally charged with a violation of Disciplinary Rule 2–101(b), which aims at misleading statements by an attorney, his letterhead was not found to violate this rule.

In evaluating petitioner's claim of certification, the Illinois Supreme Court focused not on its facial accuracy, but on its implied claim "as to the quality of [petitioner's] legal services," and concluded that such a qualitative claim "'might be so likely to mislead as to warrant restriction.'" 126 Ill. 2d, at 406, 534 N. E. 2d, at 984 (quoting *In re R. M. J.*, 455 U. S., at 201). This analysis confuses the distinction between statements of opinion or quality and statements of objective facts that may support an inference of quality. A lawyer's certification by NBTA is a verifiable fact, as are the predicate requirements for that certification. Measures of trial experience and hours of continuing education, like information about what schools the lawyer attended or his or her bar activities, are facts about a lawyer's training and practice. A claim of certification is not an unverifiable opinion of the ultimate quality of a lawyer's work or a promise of success, cf. *In re R. M. J.*, 455 U. S., at 201, n. 14, but is simply a fact, albeit one with multiple predicates, from which a consumer may or may not draw an inference of the likely quality of an attorney's work in a given area of practice.[10]

---

[10] Of course, many lawyers who do not have or publicize certification are in fact more able than others who do claim such a credential. The Commission does not suggest that the *absence* of certification leads consumers to conclude that these attorneys are unqualified. In any event, such a negative inference would be far more likely in a State that certifies attor-

We must assume that some consumers will infer from petitioner's statement that his qualifications in the area of civil trial advocacy exceed the general qualifications for admission to a state bar. Thus if the certification had been issued by an organization that had made no inquiry into petitioner's fitness, or by one that issued certificates indiscriminately for a price, the statement, even if true, could be misleading. In this case, there is no evidence that a claim of NBTA certification suggests any greater degree of professional qualification than reasonably may be inferred from an evaluation of its rigorous requirements. Much like a trademark, the strength of a certification is measured by the quality of the organization for which it stands. The Illinois Supreme Court merely notes some confusion in the parties' explanation of one of those requirements. See n. 9, *supra*. We find NBTA standards objectively clear, and, in any event, do not see why the degree of uncertainty identified by the State Supreme Court would make the letterhead inherently misleading to a consumer. A number of other States have their own certification plans and expressly authorize references to specialists and certification,[11] but there is no evidence that the con-

---

neys under a comprehensive formal program, than in one that provides no official recognition.

[11] See, *e. g.*, Ala. Code Prof. Resp. Temp. DR 2–112 (1989); Ariz. Rule Prof. Conduct ER 7.4 (1990); Ark. Model Rule Prof. Conduct 7.4(c) (1990); Cal. Rule Ct., Policies Governing the State Bar of California Program for Certifying Legal Specialists (1990); Conn. Rule Prof. Conduct 7.4A–C (1989); Fla. Rule Regulating Bar 6–4 (1990); Ga. Rules Ct. Ann., DR 2–105(3) (1989); La. Rev. Stat. Ann., Rule of Prof. Conduct 7.4(b) (1988); Minn. Rule of Prof. Conduct 7.4 and Minn. State Bd. of Legal Certification Rules 5, 6, 8 (1990); N. J. Ct. Rule 1:39 and N. J. Rule Prof. Conduct 7.4 (1989); N. M. Rules Governing Practice of Law, Legal Specialization 19–101 *et seq.* (1988); N. C. Ann. Rules, Plan of Certified Legal Specialization, App. H (1990); S. C. Sup. Ct. Rule 53 (1988); Tex. State Bar Rules, Art. 10, § 9, DR 2–101(C), (1989); Utah Rule Prof. Conduct 7.4(b) (1990).

Board certification of specialists in various branches of medicine, handled by the 23 member boards of the American Board of Medical Specialties, is based on various requirements of education, residency, examinations

sumers in any of these States are misled if they do not inform themselves of the precise standards under which claims of certification are allowed.

Nor can we agree with the Illinois Supreme Court's somewhat contradictory fears that juxtaposition of the references to being "certified" as a "specialist" with the identification of the three States in which petitioner is "licensed" conveys, on the one hand, the impression that NBTA had the authority to grant those licenses and, on the other, that the NBTA certification was the product of official state action. The separate character of the two references is plain from their texts: one statement begins with the verb "[c]ertified" and identifies the source as the *"National* Board of Trial Advocacy," while the second statement begins with the verb "[l]icensed" and identifies *States* as the source of licensure. The references are further distinguished by the fact that one is indented below petitioner's name while the other uses the same margin as his name. See *supra,* at 96. There has been no finding that any person has associated certification with governmental action—state or federal—and there is no basis for belief that petitioner's representation generally would be so construed.

We are satisfied that the consuming public understands that licenses—to drive cars, to operate radio stations, to sell liquor—are issued by governmental authorities and that a host of certificates—to commend job performance, to convey an educational degree, to commemorate a solo flight or a hole in one—are issued by private organizations. The dictionary definition of "certificate," from which the Illinois

and evaluations. American Board of Medical Specialties, Board Evaluation Procedures: Developing a Research Agenda, Conference Proceedings 7–11 (1981). The average member of the public does not know or necessarily understand these requirements, but board certification nevertheless has "come to be regarded as evidence of the skill and proficiency of those to whom they [have] been issued." American Board of Medical Specialties, Evaluating the Skills of Medical Specialists 1 (J. Lloyd and D. Langsley eds. 1983).

Supreme Court quoted only excerpts, comports with this common understanding:

> "[A] document issued by *a school,* a state agency, *or a professional organization* certifying that one has satisfactorily *completed a course of studies, has passed a qualifying examination, or has* attained professional standing in a given field and may officially practice or hold a position in that field." Webster's Third New International Dictionary 367 (1986 ed.) (emphasis added to portions omitted from 126 Ill. 2d, at 405, 534 N. E. 2d, at 984).

The court relied on a similarly cramped definition of "specialist," turning from Webster's—which contains no suggestion of state approval of "specialists"—to the American Bar Association's Comment to Model Rule 7.4, which prohibits a lawyer from stating or implying that he is a "specialist" except for designations of patent, admiralty, or state-designated specialties. The Comment to the Rule concludes that the terms "specialist" and "specialty" "have acquired a secondary meaning implying formal recognition as a specialist and, therefore, use of these terms is misleading" in States that have no formal certification procedures. ABA Model Rule of Professional Conduct 7.4 and Comment (1989). We appreciate the difficulties that evolving standards for attorney certification present to national organizations like the ABA.[12] However, it seems unlikely that petitioner's state-

---

[12] Prior to its revision in 1989, the Comment to ABA Model Rule of Professional Conduct 7.4 also prohibited any statement that a lawyer's practice "is limited to," or "concentrated in," an area under the same explanation that these terms had "a secondary meaning implying formal recognition as a specialist." Model Rule 7.4 Comment (1983). When Rule 7.4 was originally proposed in 1983, proponents of unsuccessful amendments to drop all prohibition of terms argued that "the public does not attach the narrow meaning to the word 'specialist' that the legal profession generally does. The public would perceive no distinction between a lawyer's claim that he practices only probate law and a claim that he concentrates his practice in probate law." ABA, The Legislative History of the

ment about his certification as a "specialist" by an identified national organization necessarily would be confused with formal state recognition. The Federal Trade Commission, which has a long history of reviewing claims of deceptive advertising, fortifies this conclusion with its observation that "one can readily think of numerous other claims of specialty—from 'air conditioning specialist' in the realm of home repairs to 'foreign car specialist' in the realm of automotive repairs—that cast doubt on the notion that the public would automatically mistake a claim of specialization for a claim of formal recognition by the State." Brief for Federal Trade Commission as *Amicus Curiae* 24.

We reject the paternalistic assumption that the recipients of petitioner's letterhead are no more discriminating than the audience for children's television. Cf. *Bolger* v. *Youngs Drug Products Corp.*, 463 U. S. 60, 74 (1983).[13] The two

---

Model Rules of Professional Conduct 189 (1987). The amendments' opponents argued that allowing lawyers to designate themselves as specialists would undermine the States' ability to set up and control specialization programs. *Ibid.* This position essentially conceded that these terms did not *yet* have "a secondary meaning implying formal recognition," but only that they *could develop* such a secondary meaning if state programs came into being.

Rule 7.4's exception for designations of "Patent Attorney" and "Proctor in Admiralty" ignores the asserted interest in avoiding confusion from any secondary meaning of these terms. The Comment to Rule 7.4 actually imbues these terms with a historical, virtually formal, recognition, despite the lack of any prerequisites for their use: "Recognition of specialization in patent matters is a matter of long-established policy of the Patent and Trademark Office. Designation of admiralty practice has a long historical tradition associated with maritime commerce and the federal courts." ABA Model Rule of Professional Conduct 7.4 Comment (1989).

[13] JUSTICE O'CONNOR's legal conclusion about the deceptive potential of petitioner's letterhead, like that of the Illinois Supreme Court, rests on a flexible appraisal of the character of the consuming public. For example, her opinion emphasizes the "public's comparative lack of knowledge" about the legal profession and its lack of "sophistication concerning legal services," *post*, at 120, 124, but simultaneously reasons that the public will believe that all certifications are state sanctioned because of their "common

state courts that have evaluated lawyers' advertisements of their certifications as civil trial specialists by NBTA have concluded that the statements were not misleading or deceptive on their face, and that, under our recent decisions, they were protected by the First Amendment. *Ex parte Howell*, 487 So. 2d 848 (Ala. 1986); *In re Johnson*, 341 N. W. 2d 282 (Minn. 1983). Given the complete absence of any evidence of deception in the present case, we must reject the contention that petitioner's letterhead is actually misleading.

## IV

Even if petitioner's letterhead is not actually misleading, the Commission defends Illinois' categorical prohibition against lawyers' claims of being "certified" or a "specialist" on the assertion that these statements are potentially misleading. In the Commission's view, the State's interest in avoiding any possibility of misleading some consumers with such communications is so substantial that it outweighs the cost of providing other consumers with relevant information about lawyers who are certified as specialists. See *Central Hudson Gas & Electric Corp.* v. *Public Service Comm'n of New York*, 447 U. S. 557, 566 (1980).

We may assume that statements of "certification" as a "specialist," even though truthful, may not be understood fully by some readers. However, such statements pose no greater potential of misleading consumers than advertising

knowledge that States police the ethical standards of the profession" and their specific knowledge that States like California are now certifying legal specialists, *post*, at 124. These consumers also can distinguish "Registered Patent Attorney" from "Certified Patent Attorney," interpreting the former as an acceptable "reporting of professional experience," but the latter as a deceptive "claim of quality." *Post*, at 126.

We prefer to assume that the average consumer, with or without knowledge of the legal profession, can understand a statement that certification by a *national* organization is not certification by the *State*, and can decide what, if any, value to accord this information.

admission to "Practice before: The United States Supreme Court," *In re R. M. J.*, 455 U. S. 191 (1982),[14] of exploiting the audience of a targeted letter, *Shapero* v. *Kentucky Bar Assn.*, 486 U. S. 466 (1988), or of confusing a reader with an accurate illustration, *Zauderer* v. *Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U. S. 626 (1985). In this case, as in those, we conclude that the particular state rule restricting lawyers' advertising is "'broader than reasonably necessary to prevent the' perceived evil." *Shapero*, 486 U. S., at 472, (quoting *In re R. M. J.*, 455 U. S., at 203). Cf. *Ohralik* v. *Ohio State Bar Assn.*, 436 U. S. 447 (1978) (restricting in-person solicitation).[15] The need for a complete prophylactic against any claim of specialty is undermined by the fact that use of titles such as "Registered Patent Attorney" and "Proctor in Admiralty," which are permitted under Rule 2–105(a)'s exceptions, produces the same risk of deception.

---

[14] The attempt in JUSTICE O'CONNOR's dissent to distinguish *In re R. M. J.* by reasoning that a consumer can contact the Supreme Court to see if a lawyer is really a member of the Court's Bar, *post*, at 122, misses the point. Both admission to the Bar of this Court and certification by NBTA are facts, whether or not consumers verify them. The legal question is whether a statement of either fact is nonetheless so misleading that it falls beyond the First Amendment's protections. We found that the advertisement of admission to the Bar of this Court could not be banned, despite recognition that "this relatively uninformative fact is at least bad taste" and "could be misleading to the general public unfamiliar with the requirements of admission to the Bar of this Court." *In re R. M. J.*, 455 U. S., at 205–206.

[15] It is noteworthy that JUSTICE WHITE's reference to the overbreadth doctrine, see *post*, at 118–119, is potentially misleading. That doctrine allows a party whose own conduct is not protected by the First Amendment to challenge a regulation as overbroad because of its impact on parties not before the Court. In this case we hold that Illinois Disciplinary Rule 2–105 is invalid as applied to petitioner Peel. Accordingly, the overbreadth doctrine to which JUSTICE WHITE refers has no relevance to our analysis.

Lacking empirical evidence to support its claim of deception, the Commission relies heavily on the inherent authority of the Illinois Supreme Court to supervise its own bar. JUSTICE O'CONNOR's dissent urges that "we should be more deferential" to the State, asserting without explanation that "the Supreme Court of Illinois is in a far better position than is this Court to determine which statements are misleading or likely to mislead." [16] Whether the inherent character of a statement places it beyond the protection of the First Amendment is a question of law over which Members of this Court should exercise *de novo* review. Cf. *Bose Corp.* v. *Consumers Union of United States, Inc.*, 466 U. S. 485, 498–511 (1984). That the judgment below is by a State Supreme Court exercising review over the actions of its State Bar Commission does not insulate it from our review for constitutional infirmity. See, *e. g., Baird* v. *State Bar of Arizona*, 401 U. S. 1 (1971). The Commission's authority is necessarily constrained by the First Amendment to the Federal Constitution, and specifically by the principle that disclosure of truthful, relevant information is more likely to make a positive contribution to decisionmaking than is concealment of such information. *Virginia Pharmacy Bd.* v. *Virginia Citizens Consumer Council, Inc.*, 425 U. S. 748, 770 (1976);

---

[16] *Post*, at 121. JUSTICE O'CONNOR's abdication of review would create radical disparities in First Amendment protections from State to State. On the one hand, it finds that the Illinois Supreme Court "properly concluded [that] certification is tantamount to a claim of quality and superiority and is therefore inherently likely to mislead." *Post*, at 123. Under this analysis, claims of certification by States as well as by private organizations are deceptive and thus fall outside of the First Amendment's protection; indeed, Illinois forbids claims of "certification" as a "specialist" by any entity. See also *post*, at 121 (listing States that ban certification). On the other hand, JUSTICE O'CONNOR apparently also would defer to the contrary judgments of other States, which have held that the First Amendment protects claims of NBTA certification by members of their bars, *e. g., Ex parte Howell*, 487 So. 2d 848 (Ala. 1986); *In re Johnson*, 341 N. W. 2d 282 (Minn. 1983), and have held that claims of official state certification are permissible, see, *e. g., post*, at 124 (listing States that certify).

*Central Hudson Gas & Electric Corp.*, 447 U. S., at 562. Even if we assume that petitioner's letterhead may be potentially misleading to some consumers, that potential does not satisfy the State's heavy burden of justifying a categorical prohibition against the dissemination of accurate factual information to the public. *In re R. M. J.*, 455 U. S., at 203.

The presumption favoring disclosure over concealment is fortified in this case by the separate presumption that members of a respected profession are unlikely to engage in practices that deceive their clients and potential clients. As we noted in *Bates* v. *State Bar of Arizona*, 433 U. S., at 379:

> "It is at least somewhat incongruous for the opponents of advertising to extol the virtues and altruism of the legal profession at one point, and, at another, to assert that its members will seize the opportunity to mislead and distort."

We do not ignore the possibility that some unscrupulous attorneys may hold themselves out as certified specialists when there is no qualified organization to stand behind that certification. A lawyer's truthful statement that "XYZ Board" has "certified" him as a "specialist in admiralty law" would not necessarily be entitled to First Amendment protection if the certification were a sham. States can require an attorney who advertises "XYZ certification" to demonstrate that such certification is available to all lawyers who meet objective and consistently applied standards relevant to practice in a particular area of the law. There has been no showing—indeed no suggestion—that the burden of distinguishing between certifying boards that are bona fide and those that are bogus would be significant, or that bar associations and official disciplinary committees cannot police deceptive practices effectively. Cf. *Shapero*, 486 U. S., at 477 ("The record before us furnishes no evidence that scrutiny of targeted solicitation letters will be appreciably more burdensome or less reliable than scrutiny of advertisements").

"If the naiveté of the public will cause advertising by attorneys to be misleading, then it is the bar's role to assure that the populace is sufficiently informed as to enable it to place advertising in its proper perspective." *Bates*, 433 U. S., at 375. To the extent that potentially misleading statements of private certification or specialization could confuse consumers, a State might consider screening certifying organizations or requiring a disclaimer about the certifying organization or the standards of a specialty. *In re R. M. J.*, 455 U. S., at 201–203.[17] A State may not, however, completely ban statements that are not actually or inherently misleading, such as certification as a specialist by bona fide organizations such as NBTA. Cf. *In re Johnson*, 341 N. W. 2d, at 283 (striking down the Disciplinary Rule that prevented statements of being "'a specialist unless and until the Minnesota Supreme Court adopts or authorizes rules or regulations permitting him to do so'"). Information about certification and specialties facilitates the consumer's access to legal services and thus better serves the administration of justice.[18]

Petitioner's letterhead was neither actually nor inherently misleading. There is no dispute about the bona fides and the

---

[17] It is not necessary here—as it also was not in *In re R. M. J.*—to consider when a State might impose some disclosure requirements, rather than a total prohibition, in order to minimize the possibility that a reader will misunderstand the significance of a statement of fact that is protected by the First Amendment. We agree with JUSTICE MARSHALL, *post*, at 111, that a holding that a total ban is unconstitutional does not necessarily preclude less restrictive regulation of commercial speech.

[18] See *Bates* v. *State Bar of Arizona*, 433 U. S. 350, 376 (1977). A principal reason why consumers do not consult lawyers is because they do not know how to find a lawyer able to assist them with their particular problems. Federal Trade Commission, Staff Report on Improving Consumer Access to Legal Services: The Case for Removing Restrictions of Truthful Advertising 1 (1984). JUSTICE O'CONNOR would extend this convenience to consumers who seek admiralty, patent, and trademark lawyers, *post*, at 126, but not to consumers who need a lawyer certified or specializing in more commonly needed areas of the law.

relevance of NBTA certification. The Commission's concern about the possibility of deception in hypothetical cases is not sufficient to rebut the constitutional presumption favoring disclosure over concealment. Disclosure of information such as that on petitioner's letterhead both serves the public interest and encourages the development and utilization of meritorious certification programs for attorneys. As the public censure of petitioner for violating Rule 2–105(a)(3) violates the First Amendment, the judgment of the Illinois Supreme Court is reversed, and the case is remanded for proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, concurring in the judgment.

Petitioner's letterhead is neither actually nor inherently misleading. I therefore concur in the plurality's holding that Illinois may not prohibit petitioner from holding himself out as a civil trial specialist certified by the National Board of Trial Advocacy (NBTA). I believe, though, that petitioner's letterhead statement is potentially misleading. Accordingly, I would hold that Illinois may enact regulations other than a total ban to ensure that the public is not misled by such representations. Because Illinois' present regulation is unconstitutional as applied to petitioner, however, the judgment of the Illinois Supreme Court must be reversed and the case remanded for further proceedings.

The scope of permissible regulation depends on the nature of the commercial speech in question. States may prohibit actually or inherently misleading commercial speech entirely. *In re R. M. J.*, 455 U. S. 191, 203 (1982). They may not, however, ban *potentially* misleading commercial speech if narrower limitations could be crafted to ensure that the information is presented in a nonmisleading manner. *Ibid.*

I agree with the plurality that petitioner's reference to his NBTA certification as a civil trial specialist is not actually

misleading. *Ante*, at 105–106. The record contains no evidence that any recipient of petitioner's stationery actually has been misled by the statement. I also believe that petitioner's letterhead statement is not inherently misleading such that it may be banned outright. The Court has upheld such a ban only when the particular method by which the information is imparted to consumers is inherently conducive to deception and coercion. In *Ohralik* v. *Ohio State Bar Assn.*, 436 U. S. 447 (1978), the Court upheld a prophylactic ban on a lawyer's in-person solicitation of clients for pecuniary gain because such solicitation "is inherently conducive to over-reaching and other forms of misconduct." *Id.*, at 464. A statement on a letterhead, however, does not raise the same concerns as face-to-face barratry because the recipient of a letter does not have "a badgering advocate breathing down his neck" and can take time to reflect on the information provided to him. *Shapero* v. *Kentucky Bar Assn.*, 486 U. S. 466, 475–476 (1988). The Court has also suggested that commercial speech that is devoid of intrinsic meaning may be inherently misleading, especially if such speech historically has been used to deceive the public. *In re R. M. J.*, *supra*, at 202 (citing *Friedman* v. *Rogers*, 440 U. S. 1 (1979), which upheld a ban on the use of trade names by optometrists). The statement about petitioner's NBTA certification does not fit this category, as it does impart some information and as the State has made no showing that similar claims have been used to deceive. Illinois therefore may not prohibit petitioner from including the statement in his letterhead.

The statement is nonetheless *potentially* misleading. The name "National Board of Trial Advocacy" could create the misimpression that the NBTA is an agency of the Federal Government. Although most lawyers undoubtedly know that the Federal Government does not regulate lawyers, most nonlawyers probably do not; thus, the word "National" in the NBTA's name does not dispel the potential implication

that the NBTA is a governmental agency. Furthermore, the juxtaposition on petitioner's letterhead of the phrase "Certified Civil Trial Specialist By the National Board of Trial Advocacy" with "Licensed: Illinois, Missouri, Arizona" could lead even lawyers to believe that the NBTA, though not a governmental agency, is somehow sanctioned by the States listed on the letterhead. Cf. *post*, at 123 (O'CONNOR, J., dissenting).

The plurality's assertion that the letterhead is unlikely to mislead a person to think that the NBTA is in some way affiliated with the Government is founded on the assumption that people understand that licenses are issued by governmental authorities, whereas certificates are issued by private organizations. *Ante*, at 103–104. But the dictionary definition of "certificate" relied on by the plurality in fact suggests that "certified" will often be understood as connoting governmental authorization:

> "[A] document issued by a school, *a state agency, or* a professional organization certifying that one has satisfactorily completed a course of studies, has passed a qualifying examination, *or has attained professional standing in a given field and may officially practice or hold a position in that field*." Webster's Third New International Dictionary 367 (1986 ed.) (emphases added). See also *ibid*. (defining "certify" as, *inter alia*, "license").

Indeed, this interpretation accords with many States' practice of certifying legal specialists, see *post*, at 124 (O'CONNOR, J., dissenting), and other professionals. For instance, many States prescribe requirements for, and "certify" public accountants as, "Certified Public Accountants." See, *e. g.*, Ill. Rev. Stat., ch. 111, ¶5500.01 *et seq.* (1987 and Supp. 1988). See also Webster's, *supra*, at 367 (defining "certified public accountant" as "an accountant usu[ally] in professional public practice who has met the requirements of a state law and has been granted a state certificate"). The phrase "Cer-

tified Civil Trial Specialist By the National Board of Trial Advocacy," without further explanation, is thus potentially misleading, at least when placed in proximity to petitioner's listing of his licenses to practice law in three States. Cf. *Zauderer* v. *Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U. S. 626, 652 (1985) (holding that attorney advertisement promising "if there is no recovery, no legal fees are owed by our clients" was potentially misleading because "members of the public are often unaware of the technical meanings of such terms as 'fees' and 'costs'—terms that, in ordinary usage, might well be virtually interchangeable").

In addition, the reference to petitioner's certification as a civil trial specialist may cause people to think that petitioner is necessarily a better trial lawyer than attorneys without the certification. Cf. *post*, at 123 (O'CONNOR, J., dissenting). We have recognized that "advertising claims as to the quality of services . . . are not susceptible of measurement or verification; accordingly, such claims may be so likely to be misleading as to warrant restriction." *Bates* v. *State Bar of Ariz.*, 433 U. S. 350, 383–384 (1977). The plurality discounts the misleading nature of the reference in two ways. First, it asserts that the reference to NBTA certification is not an opinion, but a verifiable fact, and that the requirements for certification are also verifiable facts. *Ante*, at 101. Second, it suggests that any inference of superiority that a consumer draws from the reference is justified, *ante*, at 102, apparently because it believes that anyone who passes the NBTA's "'rigorous and exacting'" standards possesses exceptional qualifications, *ante*, at 95 (quoting *In re Johnson*, 341 N. W. 2d 282, 283 (Minn. 1983)). Whereas certification as a specialist by a "bogus" organization without "objective and consistently applied standards relevant to practice in a particular area of law" might be misleading, the plurality argues, *ante*, at 109, NBTA certification suggests no "greater degree of professional qualification than reasonably may be inferred from an evaluation of its rigorous requirements," *ante*, at 102.

Although these characteristics may buttress the plurality's conclusion that petitioner's letterhead statement is not *inherently* misleading, they do not prevent that statement from being *potentially* misleading. Facts as well as opinions can be misleading when they are presented without adequate information. Even if, as the plurality suggests, NBTA-certified lawyers are *generally* more highly qualified for trial work than the average attorney, petitioner's statement is still potentially misleading because a person reasonably could draw a different inference from it. A person could think, for instance, that "Certified Civil Trial Specialist" means that petitioner has an unusually high success rate in civil trials. Alternatively, a person could think that all lawyers are considered by the NBTA for certification as a specialist, so that petitioner is *necessarily* a better trial lawyer than every lawyer not so certified. Neither inference, needless to say, would be true.

The potential for misunderstanding might be less if the NBTA were a commonly recognized organization and the public had a general understanding of its requirements. The record contains no evidence, however, that the NBTA or, more importantly, its certification requirements are widely known.

This Court examined a statement similar to petitioner's in *In re R. M. J.* There, an attorney had been disciplined by the state bar for advertising, among other things, that he was "Admitted to Practice Before THE UNITED STATES SUPREME COURT." 455 U. S., at 197. We found that "this relatively uninformative fact . . . could be misleading to the general public unfamiliar with the requirements of admission to the Bar of this Court." *Id.*, at 205. We held that the State's total ban on such information was unconstitutional, however, in part because the state court had made no finding that the information was misleading; nor had the State attempted a less restrictive means of preventing deception,

such as "requir[ing] a statement explaining the nature of the Supreme Court Bar." *Id.*, at 206. Nevertheless, our acknowledgment that the statement was *potentially* misleading and our suggestion that the State could require the attorney to provide additional information are instructive.

Because a claim of certification by the NBTA as a civil trial specialist is potentially misleading, States may enact measures other than a total ban to prevent deception or confusion. This Court has suggested that States may, for example, require "some limited supplementation, by way of warning or disclaimer or the like, . . . so as to assure that the consumer is not misled." *Bates, supra*, at 384. Accord, *In re R. M. J., supra*, at 203 ("[T]he remedy in the first instance is not necessarily a prohibition but preferably a requirement of disclaimers or explanation"). The Court's decisions in *Shapero* and *Zauderer* provide helpful guidance in this area. In *Shapero*, the Court held that States may not categorically prohibit lawyers from soliciting business for pecuniary gain by sending personalized letters to potential clients known to face particular legal problems. 486 U. S., at 476. The Court said that States could, however, enact less restrictive measures to prevent deception and abuse, such as requiring that a personalized letter bear a label identifying it as an advertisement or a statement informing the recipient how to report an inaccurate or misleading letter. *Id.*, at 477–478. In *Zauderer*, the Court held that a State could not ban newspaper advertisements containing legal advice or illustrations because the State had failed to show that it could not combat potential abuses by means short of a blanket ban. 471 U. S., at 644, 648–649. But the Court held that the State could require attorneys advertising contingent-fee services to disclose that clients would have to pay costs even if their lawsuits were unsuccessful to prevent the possibility that people would erroneously think that they would not owe their attorneys any money if they lost their cases. *Id.*, at 650–653.

Following the logic of those cases, a State could require a lawyer claiming certification by the NBTA as a civil trial specialist to provide additional information in order to prevent that claim from being misleading.[1] The State might, for example, require a disclaimer stating that the NBTA is a private organization not affiliated with, or sanctioned by, the State or Federal Government. The State also could require information about the NBTA's requirements for certification as a specialist so that any inferences drawn by consumers about the quality of services offered by an NBTA-certified attorney would be based on more complete knowledge of the meaning of NBTA certification. Each State, of course, may decide for itself, within the constraints of the First Amendment, how best to prevent such claims from being misleading.[2]

---

[1] JUSTICE O'CONNOR suggests that any regulation short of a total ban on claims such as petitioner's would require "case-by-case review" of each certification claim and would be unduly burdensome on the State. *Post*, at 125. On the contrary, a State could easily establish generally applicable regulations setting forth what types of information must accompany a claim of certification or specialty. The state agency in charge of enforcing those regulations could then investigate and adjudicate alleged violations of the regulations, just as such agencies do under existing disciplinary rules. No advance approval of every claim would be required.

In any event, this Court's primary task in cases such as this is to determine whether a state law or regulation unduly burdens the speaker's exercise of First Amendment rights, not whether respect for those rights would be unduly burdensome for the State. Because Illinois can prevent petitioner's claim from being misleading without banning that claim entirely, the State's total ban is unconstitutional *as applied in this case.* Cf. *post*, at 118–119 (WHITE, J., dissenting). The burden is on the State to enact a constitutional regulation, not on petitioner to guess in advance what he would have to do to comply with such a regulation.

[2] The precise amount of information necessary to avoid misunderstandings need not be decided here. The poles of the spectrum of disclosure requirements, however, are clear. A State may require an attorney to provide more than just the fact of his certification as a civil trial specialist by the NBTA. But a State may not require an attorney to include in his letterhead an exhaustive, detailed recounting of the NBTA's certification requirements because more limited disclosure would suffice to prevent the

JUSTICE WHITE, dissenting.

I agree with JUSTICE MARSHALL that petitioner's letterhead is potentially misleading and with the reasons he gives for this conclusion. Thus, there are four Justices—JUSTICE STEVENS and the three Justices joining his opinion—who believe that the First Amendment protects the letterhead as it is and that the State may not forbid its circulation. But there are five Justices who believe that this particular letterhead is unprotected: JUSTICE O'CONNOR, THE CHIEF JUSTICE, and JUSTICE SCALIA believe the letterhead is inherently misleading and hence would uphold Rule 2–105(a)(3) of the Illinois Code of Professional Responsibility; at least two of us—JUSTICE MARSHALL and myself—find it potentially misleading and would permit the State to ban such letterheads but only if they are not accompanied by disclaimers appropriate to avoid the danger. This letterhead does not carry such a disclaimer. The upshot is that while the State may not apply its flat ban to any and all claims of certification by attorneys, particularly those carrying disclaimers, the State should be allowed to apply its Rule to the letterhead in its present form and forbid its circulation. That leads me to affirm, rather than to reverse, the judgment below.

To reverse is to leave petitioner free to circulate his letterhead, not because it is protected under the First Amendment—indeed, it is not—but because five Justices refuse to enforce the Rule even as applied, leaving the State powerless to act unless it drafts a narrower rule that will survive scrutiny under the First Amendment. This is nothing less than a

possibility that people would be misled. Cf. *Zauderer* v. *Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U. S. 626, 663–664 (1985) (BRENNAN, J., concurring in part, concurring in judgment in part, and dissenting in part) ("[C]ompelling the publication of detailed fee information that would fill far more space than the advertisement itself . . . would chill the publication of protected commercial speech and would be entirely out of proportion to the State's legitimate interest in preventing potential deception").

brand of overbreadth, a doctrine that has little if any place in considering the validity of restrictions on commercial speech, which is what is involved in this case. *Bates* v. *State Bar of Arizona*, 433 U. S. 350, 380–381 (1977). *Bates* "established the nonapplicability of overbreadth analysis to commercial speech." *Board of Trustees of State University of N. Y.* v. *Fox*, 492 U. S. 469, 483 (1989); accord, *Shapero* v. *Kentucky Bar Assn.*, 486 U. S. 466, 478 (1988); *Ohralik* v. *Ohio State Bar Assn.*, 436 U. S. 447, 463, n. 20 (1978). This being so, the inquiry is not whether the regulation at issue here is invalid on its face, but whether it was constitutionally applied to forbid circulation of the letterhead in its present form. It is plain enough that it was so applied, for five of us hold that the letterhead is at least potentially misleading and hence must carry an appropriate disclaimer to qualify for circulation. As I see it, it is petitioner who should have to clean up his advertisement so as to eliminate its potential to mislead. Until he does, the State's Rule legally bars him from circulating the letterhead in its present form.

I would therefore affirm the judgment.

JUSTICE O'CONNOR, with whom THE CHIEF JUSTICE and JUSTICE SCALIA join, dissenting.

This case provides yet another example of the difficulties raised by rote application of the commercial speech doctrine in the context of state regulation of professional standards for attorneys. Nothing in our prior cases in this area mandates that we strike down the state regulation at issue here, which is designed to ensure a reliable and ethical profession. Failure to accord States considerable latitude in this area embroils this Court in the micromanagement of the State's inherent authority to police the ethical standards of the profession within its borders.

Petitioner argues for the first time before this Court that the statement on his letterhead that he is a certified trial specialist is not commercial speech. I agree with the plurality that we need not reach this issue in this case. *Ante*, at 99–100. We

generally do not "decide federal constitutional issues raised here for the first time on review of state court decisions." *Cardinale* v. *Louisiana*, 394 U. S. 437, 438 (1969).

We recently summarized our standards for commercial speech by attorneys in *Zauderer* v. *Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U. S. 626 (1985):

> "The States and the Federal Government are free to prevent the dissemination of commercial speech that is false, deceptive, or misleading, see *Friedman* v. *Rogers*, 440 U. S. 1 (1979) . . . . Commercial speech that is not false or deceptive and does not concern unlawful activities . . . may be restricted only in the service of a substantial governmental interest, and only through means that directly advance that interest." *Id.*, at 638.

In my view, application of this standard requires us to affirm the Illinois Supreme Court's decision that Rule 2–105(a)(3) of the Illinois Code of Professional Responsibility is a valid measure to control misleading and deceptive speech. "The public's comparative lack of knowledge, the limited ability of the professions to police themselves, and the absence of any standardization in the 'product' renders [attorney commercial speech] especially susceptible to abuses that the States have a legitimate interest in controlling." *In re R. M. J.*, 455 U. S. 191, 202 (1982). Although certifying organizations, such as the National Board of Trial Advocacy (NBTA), may provide a valuable service to the legal profession and the public, I would permit the States broad latitude to ensure that consumers are not misled or deceived by claims of certification.

In *In re R. M. J.*, *supra*, the Court stated that it "has made clear . . . that regulation—and imposition of discipline—are permissible where the particular advertising is inherently likely to deceive *or* where the record indicates that a particular form or method of advertising has in fact been deceptive." *Ibid.* (emphasis added). The plurality in this case correctly notes that the statements in petitioner's letterhead have not been shown actually to deceive consumers, see *ante*,

at 100–101, but it fails adequately to address whether the statements are "inherently likely to deceive," as the Supreme Court of Illinois concluded. *In re Peel*, 126 Ill. 2d 397, 408, 534 N. E. 2d 980, 985 (1989). Charged with the duty of monitoring the legal profession within the State, the Supreme Court of Illinois is in a far better position than is this Court to determine which statements are misleading or likely to mislead. Although we are the final arbiters on the issue whether a statement is misleading as a matter of constitutional law, we should be more deferential to the State's experience with such statements. Illinois does not stand alone in its conclusion that claims of certification are so misleading as to require a blanket ban. At least 19 States and the District of Columbia currently ban claims of certification. See Alaska Code Prof. Resp. DR 2–105 (1990); D. C. Ct. Rules, App. A., DR 2–105 (1989); Haw. Code Prof. Resp. DR 2–105 (1990); Ill. Code Prof. Resp. Rule 2–105 (1989); Ind. Rule Prof. Conduct 7.4 (1990); Iowa Code Prof. Resp. DR 2–105 (1989); Ky. Sup. Ct. Rule 7.4 (1990–1991); Md. Rule Prof. Conduct 7.4 (1990); Mass. Sup. Judicial Ct. Rule DR 2–105 (1990); Miss. Rule Prof. Conduct 7.4 (1989); Mo. Sup. Ct. Rule Prof. Conduct 7.4 (1990); Nev. Sup. Ct. Rule Prof. Conduct 198 (1990); Ore. Code Prof. Resp. DR 2–105 (1990); Pa. Rule Prof. Conduct 7.4 (1989); S. D. Rule Prof. Conduct 7.4 (1989); Tenn. Sup. Ct. Rule DR 2–105 (1988–1989); Va. Sup. Ct. Rules, pt. 6, § 2, DR 2–104 (1989); Wash. Rule Prof. Conduct 7.4 (1990); W. Va. Rule Prof. Conduct 7.4 (1990); Wis. Sup. Ct. Rule Prof. Conduct 20:7.4 (1989).

Despite the veracity of petitioner's claim of certification by the NBTA, such a claim is inherently likely to deceive the public. The plurality states that "[a] claim of certification is not an unverifiable opinion of the ultimate quality of a lawyer's work or a promise of success, . . . but is simply a fact." *Ante*, at 101 (citation omitted). This view, however, conflates fact and verifiability. Merely because something is a fact does not make it readily verifiable. A statement, even if

true, could be misleading. See also *Bates* v. *State Bar of Arizona*, 433 U. S. 350, 383 (1977) (attorney commercial speech "that is false, deceptive, *or* misleading of course is subject to restraint" (emphasis added)). The ordinary consumer with a "comparative lack of knowledge" about legal affairs should be able to assess the validity of claims and statements made in attorney advertising. Neither petitioner nor the plurality asserts that petitioner's claim of certification on its face is readily understandable to the average consumer of legal services.

The plurality verifies petitioner's statement on his letterhead by reference to the record assembled in this case, but that record is not readily available to members of the public. Given the confusion in the court below about the certification standard applied by the NBTA, see 126 Ill. 2d, at 406, 534 N. E. 2d, at 984, there can be little doubt that the meaning underlying a claim of NBTA certification is neither common knowledge nor readily verifiable by the ordinary consumer. And nothing in petitioner's letterhead reveals how one might attempt to verify the claim of certification by the NBTA. At least the claim of admission to the United States Supreme Court at issue in *In re R. M. J., supra,* which the Court stated "could be misleading," 455 U. S., at 205–206, named a readily recognizable institution or location to which inquiries could be addressed. Reference to the "NBTA" provides no such guidepost for inquiries. The State is, in my view, more than justified in banning claims of certification by the NBTA.

The plurality appears to have abandoned altogether any requirement that a statement or claim be verifiable by the ordinary consumer of legal services. Apparently, it would permit advertising claims of certification by any organization so long as the lawyer can "demonstrate that such certification is available to all lawyers who meet objective and consistently applied standards relevant to practice in a particular area of the law." *Ante,* at 109. The plurality has thereby deserted the sole policy reason that justifies its headlong plunge into

micromanagement of state bar rules—facilitation of a "consumer's access to legal services." *Ante,* at 110. Facilitation of access to legal services is hardly achieved where the consumer neither knows the organization nor can readily verify its criteria for membership.

"[A]dvertising claims as to the quality of services . . . are not susceptible of measurement or verification; accordingly, such claims may be so likely to be misleading as to warrant restriction." *Bates, supra,* at 383–384; see also *In re R. M. J., supra,* at 201 ("[C]laims as to quality . . . might be so likely to mislead as to warrant restriction"). As the Supreme Court of Illinois properly concluded, certification is tantamount to a claim of quality and superiority and is therefore inherently likely to mislead. 126 Ill. 2d, at 410, 534 N. E. 2d, at 986. Indeed, the plurality's citation of others' descriptions of NBTA certification supports the conclusion that it is intended to attest to the quality of the lawyer's work. The plurality refers to the Task Force on Lawyer Competence of the Conference of Chief Justices, Report with Findings and Recommendations to the Conference of Chief Justices, Publication No. NCSC–021, (May 26, 1982), which stated: "The National Board of Trial Advocacy, a national certification program that provides recognition for *superior achievement in trial advocacy,* uses a highly-structured certification process in addition to a formal examination to select its members." *Id.,* at 33–34 (emphasis added).

Not only does the certification claim lead the consumer to believe that this lawyer is better than those lawyers lacking such certification, it also leads to the conclusion that the State licenses the lawyer's purported superiority. The juxtaposition on petitioner's letterhead of "Licensed: Illinois, Missouri, Arizona" with the claim of NBTA certification increases the likelihood of deception. As the court below reasoned, 126 Ill. 2d, at 406, 534 N. E. 2d, at 984, the proximity of the two statements might easily lead the consumer to conclude that the State has sanctioned the certification. As it is

common knowledge that States police the ethical standards of the profession, that inference is likely to be especially misleading. The plurality disposes of this difficulty by drawing an unconvincing distinction between licensing and certification: "We are satisfied that the consuming public understands that licenses . . . are issued by governmental authorities and that a host of certificates . . . are issued by private organizations." *Ante,* at 103. Yet, no such bright line exists. For example, California is now certifying legal specialists. See Cal. Rules Ct., Policies Governing the State Bar of California Program for Certifying Legal Specialists (1990). See also Ariz. Rule Prof. Conduct ER 7.4 (1990); Ark. Model Rule Prof. Conduct 7.4(c) (1990); Fla. Rule Prof. Conduct 4–7.5(c) (1990); La. Rev. Stat. Ann., Rule of Prof. Conduct 7.4 (1988); N. J. Ct. Rule 1:39 and N. J. Rule Prof. Conduct 7.4 (1989); N. M. Rules Governing Practice of Law, Rule of Prof. Conduct 16–704 (1988); N. C. Ann. Rules, Plan of Certified Legal Specialization, App. H, Rule 5.7 (1989); S. C. Rules on Lawyer Advertising, Ct. Rule 7.4 (Supp. 1989); Tex. State Bar Rules, Art. 10, § 9, DR 2–101(C) (1989); Utah Rule Prof. Conduct 7.4(b) (1990). Thus, claims of certification may well lead the ordinary consumer to conclude that the State has sanctioned such a claim. "[B]ecause the public lacks sophistication concerning legal services," "the leeway for untruthful or misleading expression that has been allowed in other contexts has little force in the [attorney commercial speech] arena." *Bates, supra,* at 383. The Supreme Court of Illinois did not err when it concluded that the ordinary consumer is likely to be misled by the juxtaposition of state bar admission and claims of civil trial specialty. Because the statement of certification on petitioner's letterhead is inherently misleading, the State may prohibit it without violation of the First Amendment. See *In re R. M. J., supra,* at 203 ("Misleading advertising may be prohibited entirely").

Petitioner does not suggest a less burdensome means of regulating attorney claims of certification than case-by-case

determination. Under petitioner's theory, the First Amendment requires States that would protect their consumers from misleading claims of certification to provide an individual hearing for each and every claim of certification, extending well beyond NBTA certification to any organization that may be used by a resourceful lawyer. In my view, the First Amendment does not require the State to establish such an onerous system and permits the State simply to prohibit such inherently misleading claims.

As a majority of this Court agree, see *ante*, at 111 (MARSHALL, J., concurring in judgment, joined by BRENNAN, J.); *ante*, at 118 (WHITE, J., dissenting); *supra*, at 121–124 (O'CONNOR, J., dissenting, joined by REHNQUIST, C. J., and SCALIA, J.), petitioner's claim to certification is at least potentially misleading. If the information cannot be presented in a way that is not deceptive, even statements that are merely potentially misleading may be regulated with an absolute prohibition. See *In re R. M. J.*, 455 U. S., at 203. It is difficult to believe that a disclaimer could be fashioned, as the plurality suggests, *ante*, at 110; see also opinion concurring in judgment, *ante*, at 117, that would make petitioner's claim of certification on his letterhead not potentially misleading. Such a disclaimer would have to communicate three separate pieces of information in a space that could reasonably fit on a letterhead along with the claim of certification: (1) that the claim to certification does not necessarily indicate that the attorney provides higher quality representation than those who are not certified; (2) that the certification is not state sanctioned; and (3) either the criteria for certification or a reasonable means by which the consumer could determine what those criteria are. Even if the State were to permit claims of certification along with disclaimers, in order to protect consumers adequately, the State would have to engage in case-by-case review to ensure that the misleading character of a particular claim to certification was cured by a particular disclaimer. Alternatively, the State would be forced

to fashion its own disclaimer for each organization for which certification is claimed by the attorneys within its borders, provide for certification itself, or, at the least, screen each organization. See, *e. g.*, Ala. Code Prof. Resp. Temp. DR 2–112 (1989) (providing for state screening of certifying organizations). Although having information about certification may be helpful for consumers, the Constitution does not require States to go to these extremes to protect their citizens from deception. In my view, the Court would do well to permit the States broad latitude to experiment in this area so as to allow such forms of disclosure as best serve each State's legitimate goal of assisting its citizens in obtaining the most reliable information about legal services.

Petitioner also contends that Rule 2–105 violates the Equal Protection Clause as applied to him on the ground that there is no rational justification for allowing attorneys in certain areas to claim specialization, *e. g.*, admiralty, patent, and trademark, while precluding him from claiming a civil trial specialty. Yet, petitioner's claim is not merely a claim of concentration of practice, which the Illinois rules permit, but rather a claim of quality. It is not irrational for the State to assume that the reporting of professional experience is less likely to mislead the public than would claims of quality. Moreover, while the claim of NBTA certification is misleading in part because the public does not know what meaning to attach to it, the claim of concentration of practice merely states a fact understandable on its face to the ordinary consumer. Finally, as the Supreme Court of Illinois noted, historically lawyers have been permitted to advertise specialization in patent, trademark, and admiralty law because of the difficulties encountered by the general public in finding such attorneys. See 126 Ill. 2d, at 410–411, 534 N. E. 2d, at 986. Locating an attorney who is a civil trial advocate hardly poses the same obstacle. Thus, I would conclude that the regulation does not violate the Equal Protection Clause.

For the foregoing reasons, I would uphold Rule 2–105(a)(3) of the Illinois Code of Professional Responsibility and affirm the decision of the court below.