**George TSATSOS, D.P.M. and American Podiatric Medical Specialty Board, on behalf of its diplomates, Plaintiffs,**

**v.**

**Nikki ZOLLAR in her official capacity as Director of the Illinois Department of Professional Regulation and not personally, Defendant.**

No. 95 C 2994.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 7, 1996.

As Amended Nov. 1, 1996.

Robert Orman, Chicago, IL, for Plaintiff.

Ed Glicken, Asst. Attorney General, Chicago, IL, for Defendant.

### MEMORANDUM ORDER

BOBRICK, United States Magistrate Judge.

Before the court is the motion for summary judgment of plaintiffs, George Tsatsos, D.P.M. ("Dr. Tsatsos") and the American Podiatric Medical Specialties Board ("A.P.M.S.B."), on their complaint.

Plaintiffs' complaint, brought under 42 U.S.C. § 1983, seeks declaratory and other relief against defendant Nikki Zollar, ("Zollar") in her official capacity as Director of the Illinois Department of Professional Regulation, in particular for a finding that part (c) of the *Advertising* section of the Illinois Podiatric Medical Practice Act of 1987 ("Podiatric Act") 225 ILCS 100/21(c), is unconstitutional as applied to them, including those sanctions Zollar imposed upon Dr. Tsatsos.

Plaintiffs also seek injunctive relief from defendant's enforcement of part (c) of the *Advertising* section of the Podiatric Act, and recovery of attorney fees and costs under 42 U.S.C. 1988. This court's jurisdiction is found in 28 U.S.C. §§ 636(c)(1),[1] 1331, 1343, and 2201.

## I.  BACKGROUND

Plaintiffs have moved for summary judgment under Fed.R.Civ.P. 56, filing with their motion a supporting brief, and a document entitled, "Plaintiffs' Rule Local [sic] 12(M) Statement of Material Facts in Support of Motion for Summary Judgment" (Pls.' St. Facts). Defendant has failed to file any responsive materials to plaintiffs' filings in support of their motion.[2]

We begin with those requirements established by the U.S. District Court for the Northern District of Illinois, in its Local General Rules, for summary judgment proceedings. Local Rule 12(m) requires movants for summary judgment to "serve and file, [inter alia] ... a supporting memorandum of law, [and] a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law ..." If the moving party does not comply, the motion may be lost: "Failure to submit such a statement constitutes grounds for denial of the motion." Local Rule 12(m); *Schulz v. Serfilco, Ltd.*, 965 F.2d 516, 518 (7th Cir.1992). Plaintiffs, as moving party, complied completely with the rule.

---

1. The parties, pursuant to 28 U.S.C. § 636(c) consented to the assignment of the matter to this Magistrate Judge for all proceedings including trial and entry of judgment.

2. Plaintiffs filed their motion for summary judgment on February 27, 1996. On May 7, defendant filed a Motion For Enlargement Of Time To File A Response To Plaintiffs' Motion For Summary Judgment. This court granted the motion and gave defendant until June 21, 1996, to file their response. At that time, the prospects of reaching settlement were promising. Ultimately, the parties reached an impasse as to settlement of the case and on July 24, 1996, Dr. Tsatsos requested that a default judgment be entered since defendant had not filed any response to

plaintiffs' motion for summary judgment. This court denied plaintiffs'—albeit justifiable—request, and gave defendant one last chance to file a response no later than August 5, 1996. Four days after that deadline passed, defendant appeared in court with a response to plaintiff's motion; the Court refused to accept or consider defendant's response as being untimely and contrary to the Court's order of July 24, 1996. On that day, the court declined granting plaintiffs' second motion for default judgment, although they were fully entitled to same, but instead choose to make its ruling based on the issues of law and fact raised in the motion and supporting documents filed with the court. This, of course, amounted only to Dr. Tsatsos' submissions.

Local Rule 12(n) clearly enunciates what the opponent to a motion for summary judgment must do. Each party opposing a Rule 56 motion shall "serve and file, [inter alia] ... a concise response to the movant's statement that shall contain: a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon ..." Local Rule 12(n)(3). Defendant in this case has not filed any response to plaintiffs' Local Rule 12(m) Statement.

Local Rule 12 is very clear about the consequences to the party opposing summary judgment if that party fails to file a timely 12(n) statement:

All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.

Case law, likewise, is clear on the consequences of failing to file a 12(n) statement.

If a summary judgment respondent fails to file a timely 12(n) statement, the uncontroverted statements in the 12(m) statement are deemed admitted. *Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311, 1313 (7th Cir.1995). The strict application of Local Rule 12(n) has been repeatedly upheld. *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 922–23 (7th Cir.1994). Here, Dr. Tsatsos has complied with the Rule. Defendant, on the other hand, has failed not only to file a Rule 12(n) statement, but also made no response whatsoever to Dr. Tsatsos' motion. Accordingly, all of plaintiffs' statement of facts are deemed admitted.

## II. FACTS OF CASE

Dr. Tsatsos received his B.A. in pre-medicine and science from the City University of New York in 1975, and his B.S. and D.P.M. from the Illinois College of Podiatric Medicine in 1979. (Dr. Tsatsos Aff., App. at 21). Dr. Tsatsos currently practices podiatry in Illinois. (Pls.' St.Facts, ¶ 2). He was licensed to practice in Illinois and California in 1979, and in New York in 1981. (Pls.' St. Facts, ¶¶ 35–36). He is chairman of the Department of Podiatry at Bethany Hospital, and on staff at Suburban Hospital, Lincoln Park West Hospital, and Edgewater Hospital. (Pls.' St.Facts, ¶¶ 37–38). Dr. Tsatsos is certified by several Boards. Included in his certifications is the certification given by the American Board of Podiatric Orthopedics and Primary Podiatric Medicine ("A.B.P.O.P.P.M."), which is the board approved for certification of Podiatrists by the Counsel on Podiatric Medical Education ("CPME"), as provided in part (c) of the *Advertising* section of the Podiatric Act. (Pls.' St.Facts, ¶ 17).

Since 1987 Dr. Tsatsos' letterhead has contained a statement referring to his various certifications, including a statement referring to his A.P.M.S.B. certification. (Pls.' St. Facts, ¶ 9). Dr. Tsatsos' letterhead appears as follows:

## DR. GEORGE TSATSOS, F.A.A.F.S., F.A.C.F.A.O.

Board Certified Foot and Ankle Surgeon A.P.M.S.B.

Board Certified Foot and Ankle Orthopedist A.B.P.O.P.P.M.

Board Certified in Pain Management A.A.P.M.

(Dr. Tsatsos Aff.; App. at 21). Dr. Tsatsos' letterhead is entirely consistent with his credentials and is, in and of itself, not potentially or actually misleading to Illinois residents (Pls.' St.Facts, ¶¶ 13–14, 16–17, 32). Dr. Tsatsos' advertising of his A.P.M.S.B. Board Certification in his letterhead, in and of itself, serves the public interest (Pls.' St.Facts, ¶ 15).

In December of 1994, Zollar, the Director of the Illinois Department of Professional Regulation, sanctioned plaintiff claiming that in use of his letterhead he was advertising board certifications not approved by the CPME, and accordingly was in violation of part (c) of *Advertising* section of the Podiatric Act. (Pls.' St.Facts, ¶ 10, 33). Specifically, Zollar challenged Dr. Tsatsos' use in his letter of the statement "Board Certified Foot and Ankle Surgeon A.P.M.S.B."

That part of the Podiatric Act under which Zollar acted provides in relevant part:

§ 21. *Advertising.* Any podiatric physician may advertise the availability of podiatric medical services in the public media or on the premises where such services are rendered. Such advertising shall be limited to the following information:

(c) Information pertaining to areas of practice specialization, including appropriate board certification as approved by the Council on Podiatric Medical Education or limitation of professional practice.

This Act does not authorize the advertising of podiatric medical services when the offeror of such service is not a podiatric physician. Nor shall the podiatric physician use statements which contain false, fraudulent, deceptive or misleading material or guarantees of success, statements which play upon the vanity or fears of the public, or statements which promote or produce unfair competition.

225 ILCS 100/21(c).

Part (c) of the *Advertising* section of the Podiatric Act authorizes advertisement of only those boards that have been approved by the CPME. (Pls.' St.Facts, ¶¶ 17–18). The CPME, under its rules, approves only one board for each medical podiatric specialty and, in the area of foot and ankle surgery, had already approved a certifying board other than plaintiff A.P.M.S.B.[3] (Pls.' St.Facts, ¶ 6, 18). Therefore, it would not approve plaintiff Board as a certifying board in the area of foot and ankle surgery. This resulted in Dr. Tsatsos and other podiatrists certified by plaintiff Board being unable to advertise such A.P.M.S.B. certification in Illinois. (Pls.' St.Facts, ¶ 8).

Plaintiff A.P.M.S.B. is a not-for-profit Washington corporation. Plaintiff Board selects, tests, and in those cases where achievement is demonstrated, issues certifications to podiatrists in both primary care podiatry and surgery. (Pls.' St.Fact, ¶ 20–21). Plaintiff Board, in 1991, was accredited by the National Commission for Certifying Agencies,[4] the only independent organization which approves and accredits certifying boards in the

United States in the field of allied health care professionals. (Pls.' St.Facts, ¶ 22).

Plaintiff Board, as part of its certification process, requires documentation reflecting full compliance with plaintiff Board's eligibility requirements. Those requirements include a D.P.M. degree and license, letters of recommendation from professional colleagues, completion of an approved training program and/or prescribed experience and continuing education, and either twenty primary care or fifty podiatric surgery-approved cases. (Pls.' St.Facts, ¶ 24). The pass-fail percentage with respect to plaintiff Board's certifying exams is approximately 70%/30%. (Pls.' St.Facts, ¶ 25).

All of plaintiff Board's certifying examinations are administered by the Professional Testing Corporation, an independent, national, professional testing service. Examination questions are developed with the experience and expertise of the Professional Testing Corporation using sound psychometric standards and current documentation. All members of the Examination Development Committee are board-certified practitioners and include professors, chiefs-of-staffs, and residency directors. (Pls.' St.Facts, ¶ 27). Plaintiff Board does not utilize grandfathering procedures. All applicants for certification must meet the requirements of plaintiff Board. (Pls.' St.Facts, ¶ 28).

Plaintiff Board has developed a role-delineation study to determine the minimum skills necessary for competent podiatric practices in accord with the *Standards for Educational and Psychological Testing,* which were drafted by the American Educational Research Association, and National Council on Measurement in Education. This role-delineation study was compiled with the assistance of the Professional Examination Services Corporation. A full psychometric analysis is conducted on each question contained in plaintiff Board's exams. Plaintiff Board's exams are reviewed and revised on an on-going basis. (Pls.' St.Facts, ¶ 29). The Board does not issue certifications indis-

---

**3.** The CPME gave its approval only to A.B.P.O.P.P.M.

**4.** This Agency was developed with the backing and assistance of the United States Department of Health, Education, and Welfare. (*Id.*) (Pls.' St.Facts, ¶ 22).

criminately for a price, but instead inquires into the fitness of each of its applicants before certifying those applicants (Pls.' St. Facts, ¶ 11–12).

Because of the CPME's policy of approving only one board per specialty, Dr. Tsatsos is now unable to advertise his affiliation with plaintiff Board within the State of Illinois. The same is true with respect to all other similarly certified podiatric surgeons practicing in the State of Illinois. (Pls.' St.Facts, ¶ 8). Dr. Tsatsos voluntarily terminated his advertising of all prohibited certifications, (Pls.' St.Facts, ¶ 34), and joined with the A.P.B.S.B. in bringing this lawsuit to find part (c) of the *Advertising* section of the Podiatric Act unconstitutional as applied to them. Dr. Tsatsos further contends that any sanction entered against him by defendant, under the *Advertising* provision of the Podiatric Act, is likewise unconstitutional and therefore unenforceable.

## III. *ANALYSIS*

### A. *Summary Judgment*

▮ In order for a party to prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). In the context of a summary judgment proceeding, the court does not weigh evidence to determine the truth of asserted matters, but simply determines whether there is a genuine issue for trial. *Anderson v. Liberty Lobby,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The question to be considered in a motion for summary judgment is "whether, if the record of the summary judgment proceeding were the record of a trial, a reasonable factfinder, whether judge or jury, could find in favor of the party opposing the motion for summary judgment." *Tobey v. Extel/JWP., Inc.,* 985 F.2d 330, 332 (7th Cir.1993). When a defendant moves for summary judgment, it must demonstrate, based on the record, that there is an absence of evidence to support the plaintiff's case. *Celotex Corp. v. Catrett,* 477

U.S. 317, 325, 106 · S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Similarly, a plaintiff cannot rest on mere allegations of a claim, especially with respect to an issue on which it bears the burden of proof, but must affirmatively demonstrate through a specific, factual showing that there is a genuine issue for trial. *Id.* at 321–25, 106 S.Ct. at 2552–53. Summary judgment is appropriate when the evidence supporting the non-movant is merely colorable or is not significantly probative. *Bank Leumi, Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991). In the instant case defendant's failure to make any response to Plaintiff's Local Rule 12(m) Statement of Uncontested Facts results in the absence of any genuine issue of material fact or claim of absence of evidence supporting plaintiffs' claim. The court can thus move to those issues which are determinative of whether plaintiffs are entitled to judgment as a matter of law.

### B. *First Amendment and Commercial Speech*

This case essentially deals with the issue of whether a state can categorically ban a professional from truthfully advertising credentials on his letterhead and impose sanctions for infractions of that ban. On this issue the Supreme Court has twice ruled in the negative. *See Peel v. Attorney Reg. & Disciplinary Comm'n,* 496 U.S. 91, 110 S.Ct. 2281, 110 L.Ed.2d 83 (1990) and *Ibanez v. Fla. Dept. of Bus. & Pro. Regulation,* 512 U.S. 136, 114 S.Ct. 2084, 129 L.Ed.2d 118 (1994). In both cases, the Supreme Court held that a state could not restrict truthful letterhead-advertising of *bona fide* professional certifications, setting aside sanctions that a lower court upheld.

The Supreme Court recognized that the advertising of professional certifications is "a form of commercial speech entitled to protection · by the First Amendment." *Peel,* 496 U.S. at 100, 110 S.Ct. at 2287, *Ibanez,* 512 U.S. at ——, 114 S.Ct. at 2088. The court, however, noted that the First Amendment right to advertise is not absolute and set forth those circumstances under which such advertising may be restricted. *Peel,* 496 U.S. at 100, 110 S.Ct. at 2287; *Bolger v.*

*Youngs Drug Products Corp.*, 463 U.S. 60, 64–65, 103 S.Ct. 2875, 2879, 77 L.Ed.2d 469 (1983).

■ A state may restrict the advertising of professional credentials if either aspect of the following two-prong test is satisfied: "(1) whether the statement was misleading and, (2) even if it was not, whether the potentially misleading character of such statements creates a state interest sufficiently substantial to justify a categorical ban on their use." *Peel,* 496 U.S. at 100, 110 S.Ct. at 2287. A state may also restrict the advertising of professional certifications where those certifications are issued without inquiry into the fitness of the applicant or "indiscriminately for a price." *Peel,* 496 U.S. at 102, 110 S.Ct. at 2288. In this regard, the state bears "the heavy burden of justifying a categorical prohibition against the dissemination of accurate factual information." *Peel,* 496 U.S. at 109, 110 S.Ct. at 2292.

■ The burden placed upon a state to justify restrictions in the advertising of professional certifications emanates from the constitutional "presumption favoring disclosure over concealment." *Peel,* 496 U.S. at 109, 110 S.Ct. at 2292. The state's "burden is not slight; the free flow of commercial information is valuable enough to justify imposing on would-be regulators the costs of distinguishing the truthful from the false, the harmful from the misleading, and the harmless from the harmful." *Ibanez,* at ——, 114 S.Ct. at 2089 (*citing Zauderer v. Office of Disciplinary Counsel of Supreme Court,* 471

U.S. 626, 640, 105 S.Ct. 2265, 2279, 85 L.Ed.2d 652 (1985)).

■ In the instant case, Dr. Tsatsos' statement on his letterhead that he is a "Board Certified Foot and Ankle Surgeon A.P.S.M.B." is factually true and verifiable. This was the situation in *Peel* and, as did the court in *Peel,* we likewise find and conclude that "(t)here is no contention that any potential client or person was actually mislead or deceived by [Dr. Tsatsos'] stationery." *Peel,* 496 U.S. at 103, 104, 110 S.Ct. at 2288.

There is no dispute in this case that the statement in question is not actually misleading.[5] Defendant accordingly is seen to have totally failed to satisfy her burden on the issue of whether the subject advertising is actually misleading. Likewise we reach the same conclusion, for the same reasons, on the issue of whether the subject advertising is potentially misleading.[6] (*Supra,* at 947–48).

The state of the record in this case is such that the question as to whether the subject advertising is actually or potentially misleading is found to be purposely conceded by defendant in favor of plaintiffs.[7] Thus, since defendant is seen as failing totally to carry her burden under the *"Peel"* two-prong test to sustain the state's restrictions placed upon commercial speech, judgment must be rendered for plaintiffs once they establish that the certification was issued by a *bona fide* Board.

### C. Plaintiff Board's Certifications Are Bona Fide

Again, the record in this case established a complete absence of any triable fact tending

---

5. Plaintiff served upon defendant a request to admit that Dr. Tsatsos' advertising of the certification in question "is not actually misleading to Illinois residents." (Request to Admit No. 4; Pls.' St.Facts, App. 10). Defendant failed to deny this request and as such, pursuant to Fed. R.Civ.P. 36(b), is deemed admitted and thus conclusively established. Moreover, this fact has been admitted by defendant's failure to respond to plaintiff's Local General Rule 12(m) Statement ¶ 14 (*supra* at 947). Accordingly, plaintiffs have proven that the statement in question is not actually misleading.

6. Plaintiff's Request to Admit No. 3, served on defendant, asked defendant to admit or deny that the subject advertising "is not potentially misleading to Illinois residents." (Pls. St.Facts,

App. 10). Defendant again failed to respond with a denial and the fact is deemed admitted and conclusively established, as provided by Fed. R.Civ.P. 36(b). Likewise the fact was admitted by defendant's failure to respond to plaintiffs' 12(m) Statement of Fact ¶ 13. Plaintiff has proven that the statement in question is not potentially misleading.

7. The history of this case is such that defendant is found, time and time again, to have failed to controvert any of the essential and material facts alleged by plaintiffs. This leads us to believe defendant's actions were not merely inadvertent, but were singularly the result of defendant's inability to legitimately deny facts that were patently true.

to show that plaintiff Board "made no inquiry into ... fitness or had issued certificates indiscriminately for a price." These are some of the more essential matters which must be resolved in defendant's favor for her restriction upon commercial speech to be upheld. *Ibanez*, at ——, 114 S.Ct. at 2091 (*citing Peel*, 496 U.S. at 102, 110 S.Ct. at 2288). The state of the record herein is such that this court finds that plaintiff Board, which itself was subject to significant, recognized, federally-sponsored professional oversight, (*supra*, at n. 4) meticulously selected and tested its candidates and made inquiries into the fitness of each of its applicants before certifying those applicants. Additionally, there is no evidence whatsoever that the Board issued and certifications indiscriminately for a price. (*Supra*, at 948; Pls.' St.Facts, ¶ 11–12, 21–29) We find the record establishes that plaintiff Board's examination and certification process and later awarded certifications were *bona fide*. (*Id.*)

We conclude that judgment must be entered in favor of plaintiffs, as a matter of law. The state of the record in this case does not offer even a hint that Dr. Tsatsos' own certification by A.P.M.S.B., nor the A.P.M.S.B. certification process itself is deceptive, false, inherently, actually or potentially misleading, or subject to abuse.

We find ample evidence to hold that the certification by A.P.M.S.B. is unequivocally *bona fide*, and its incorporation into Dr. Tsatsos stationery, as a form of advertising, is truthful; we further find the advertising of the A.P.M.S.B. certification serves the public interest. (Pls.' St.Facts, ¶ 15). As such the A.P.M.S.B. certification can not be categorically barred or restricted by the state, as is the current situation effected by defendant's actions. Advertising of the A.P.M.S.B. certification in the State of Illinois is deserving of the protection of the First Amendment. *Ibanez*, at——, 114 S.Ct. at 2088; *Peel*, 496 U.S. at 109–110, 110 S.Ct. at 2292; *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 638, 105 S.Ct. 2265, 2275, 85 L.Ed.2d 652 (1985); *see also In re R.M.J.*, 455 U.S. 191, 203, 102 S.Ct. 929, 937, 71 L.Ed.2d 64 (1982) ("Truthful advertising related to lawful activities is enti-

tled to the protection of the First Amendment.")

The facts stated on Plaintiff's letterhead, like those in *Peel*, are true and verifiable. *Peel*, 496 U.S. at 100, 110 S.Ct. at 2288. There is no contention in this case that any potential patient was actually misled or deceived by Plaintiff's letterhead; indeed just the opposite seems to be conceded in this case. (Pls.' St.Facts, ¶¶ 13–15). A podiatrist's certification by A.P.M.S.B., like the lawyer's certification in *Peel*, is a verifiable fact, as are the predicate requirements for that certification. *Id.* at 100, 110 S.Ct. at 2288. Plaintiff's certification is not an unverifiable opinion of the ultimate quality of a podiatrist's work or a promise of success, *cf. In re R.M.J.*, 455 U.S. at 201, n. 14, 102 S.Ct. at 936, n. 14, but is a fact from which, realistically, a potential patient may or may not draw an inference concerning a podiatrist's skill level. *Peel*, 496 U.S. at 101, 110 S.Ct. at 2288.

Invariably, some potential patients will infer from Plaintiff's letterhead that his qualifications are superior to those podiatrists who are certified only by CPME. But the information is not in any way misleading, and in fact, originates from a *bona fide* certifying Board—the A.P.M.S.B.—which meticulously selects and tests its applicants. (Pls.' St. Facts, ¶ 27). Accordingly, we find the state violated the First Amendment Rights of the plaintiffs in sanctioning Dr. Tsatsos for use of the subject advertising in his letterhead, and as such judgment must be rendered in plaintiffs' favor.

## IV. CONCLUSION

This case involves nothing more than a *bona fide* podiatric practitioner who has earned a *bona fide* board-certification from a *bona fide* podiatric medical certifying board being precluded by the state from informing the public of his achievement, even though defendant has conceded that this information "serves the public interest" and is not misleading in any way. The First Amendment protects the dissemination of information which "serves the public interest." such as Dr. Tsatsos' advertising of his A.P.M.S.B. certification.

For all the foregoing reasons plaintiffs' motion for summary judgment is GRANTED. The court finds that part (c) of the *Advertising* section of the Illinois Podiatric Medical Practice Act of 1987, (225 ILCS § 100/21(c)) is unconstitutional as applied by defendant to plaintiffs and other podiatrists similarly situated. The sanctions imposed against plaintiff Dr. Tsatsos by defendant are likewise found to be unconstitutional and unenforceable. Additionally, pursuant to 42 U.S.C. § 1988, reasonable attorney fees and costs are awarded to plaintiffs from defendant.