961 A.2d 722

IN RE OPINION 39 OF THE COMMITTEE
ON ATTORNEY ADVERTISING.

JON–HENRY BARR, ESQ., GLENN A. BERGENFIELD, ESQ., CARY B. CHEIFETZ, ESQ., MARIA DELGAIZO NOTO, ESQ., ANDREW J. RENDA, JR., ESQ., AND JOHN S. VOYNICK, JR., ESQ., APPELLANTS, AND KEY PROFESSIONAL MEDIA, INC., (D/B/A "SUPER LAWYERS" AND "LAW & POLITICS"), INTERVENOR–APPELLANT,NEW JERSEY MONTHLY, LLC, APPELLANT,STUART A. HOBERMAN, ESQ., APPELLANT, AND WOODWARD–WHITE, INC., INTERVENOR–APPELLANT.

Certification granted and Remanded March 23, 2007—Submitted December 5, 2008—Decided December 17, 2008.

*Bennett J. Wasserman* and *John J. Gibbons* submitted briefs on behalf of appellants Jon–Henry Barr, Esq., Glenn A. Bergenfield, Esq., Cary B. Cheifetz, Esq., Maria Delgaizo Noto, Esq., Andrew J. Renda, Jr., Esq., and John S. Voynick, Jr., Esq. and Intervenor–Appellant Key Professional Media, Inc. (*Stryker, Tams & Dill* and *Gibbons*, attorneys; *Mr. Wasserman, Mr. Gibbons, Martin G. Gilbert, Howard A. Matalon, Kevin McNulty, Eric E. Wohlforth, Jr.* and *E. Joshua Rosenkranz* and *Jean–David Barnea*, members of the New York Bar, on the briefs).

*Arnold H. Chait* submitted briefs on behalf of appellant New Jersey Monthly, LLC *(Vogel, Chait, Collins and Schneider,* attorneys; *Mr. Chait* and *Thomas J. Molica,* on the briefs).

*Frederick J. Dennehy* submitted briefs on behalf of appellant Stuart A. Hoberman, Esq. and intervenor-appellant Woodward–White, Inc. *(Wilentz, Goldman & Spitzer,* attorneys; *Mr. Dennehy* and *Michael J. Weisslitz,* on the briefs).

*Steven N. Flanzman,* Senior Deputy Attorney General, submitted a brief on behalf of respondent Committee on Attorney Advertising *(Anne Milgram,* Attorney General of New Jersey, attorney; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel).

*Thomas R. Curtin* submitted briefs on behalf of intervenor Martindale–Hubbell *(Graham Curtin,* attorneys; *Mr. Curtin, George C. Jones* and *Jennifer L. Schoenberg,* on the briefs).

*Walter A. Lesnevich,* Chair, submitted a letter brief on behalf of *amicus curiae* Board on Attorney Certification.

*Anthony R. Saunders* submitted a brief on behalf of *amicus curiae* Federal Trade Commission *(Mr. Saunders,* attorney; *Mr. Saunders, William Blumenthal, Maureen K. Ohlhausen* and *Gustav P. Chiarello,* members of the Virginia Bar, on the brief).

PER CURIAM.

On July 24, 2006, the Supreme Court Committee on Attorney Advertising (Committee) issued *Opinion 39,* which concluded that "advertisements describing attorneys as 'Super Lawyers,' 'Best Lawyers in America,' or similar comparative titles, violate the prohibition against advertisements that are inherently comparative in nature, *RPC* 7.1(a)(3), or that are likely to create an unjustified expectation about results, *RPC* 7.1(a)(2)." *Opinion 39 of the Sup. Ct. Comm. on Attorney Adver.,* 185 *N.J.L.J.* 360, 15 *N.J. Lawyer* 1549 (July 24, 2006). For the reasons that follow, we vacate *Opinion 39* and we refer the matter jointly to the Advisory Committee on Attorney Advertising, the Advisory Committee on

Professional Ethics, and the Professional Responsibility Rules Committee for expedited rulemaking proceedings.

I.

By a letter dated May 19, 2005, and supplemented by letters dated June 21, July 13, and November 16, 2005, Lloyd D. Levenson, a member of the New Jersey Bar, brought to the attention of the Committee a magazine titled "New Jersey Super Lawyers." According to the inquirer, that "document [was] designed to be circulated amongst clients and potential clients, in order to create the impression that the attorneys designated 'Super Lawyers,' and particularly those featured in lead articles, are more qualified than other attorneys in the State of New Jersey." The inquirer asserted that the process of being designated and advertised as a "Super Lawyer" (1) violates the Committee's *Opinion 15*, which prohibits the use of testimonials "unless the statement has been uttered by an actual named client who has received the lawyer's services[;]" (2) violates *RPC* 7.1(a)(2), which prohibits advertising statements "likely to create an unjustified expectation about results[;]" (3) violates *RPC* 7.2(a), which requires that "[a]ll [attorney] advertising shall be predominantly informational[;]" (4) subverts the attorney certification provisions of *Rule* 1.39, *R.* 1:39–1 to –9; and (5) violates *RPC* 7.1(a)(3), which provides that an advertising "communication is false or misleading if it ... compares the lawyer's service with other lawyers' services[.]"

Similarly, by an e-mail dated January 10, 2006, and addressed to the members of the Committee, George J. Kenny, also of the New Jersey Bar, sent copies of correspondence he had received from another law firm in the State, touting the inclusion of several of its members among "The Best Lawyers in America for 2005" and advising that the Committee was to "consider [him] the grievant[.]"

The Committee considered these matters and, on July 26, 2006, issued *Opinion 39*. That opinion concluded that "advertisements describing attorneys as 'Super Lawyers,' 'Best Lawyers in Amer-

ica,' or similar comparative titles, violate the prohibition against advertisements that are inherently comparative in nature, *RPC* 7.1(a)(3), or that are likely to create an unjustified expectation about results, *RPC* 7.1(a)(2)." *Opinion 39*, 185 *N.J.L.J.* at 360, 15 *N.J. Lawyer* at 1549. Upon emergent application, *Opinion 39* was stayed by Orders of this Court dated August 18, 2006 and September 6, 2006.

Petitions seeking review of *Opinion 39* were filed in short order by three groups. The first to file were six lawyers [1] and Key Professional Media, Inc., d/b/a "Super Lawyers" and "Law and Politics;" that petition was filed on August 14, 2006. Ten days later, Stuart A. Hoberman, Esq., in the stead of Woodward White, Inc., the publisher of "Best Lawyers in America," also filed a petition for review. Finally, on September 18, 2006, New Jersey Monthly, LLC, which, by agreement with Key Professional Media, Inc., publishes special advertising sections in the *New Jersey Monthly* magazine titled "New Jersey Super Lawyers" and "New Jersey Super Lawyers Rising Stars," also filed its petition for review. By an Order dated March 23, 2007, this Court granted all three petitions for review and "summarily remanded [the matter] to retired Appellate Division Judge Robert A. Fall to sit as a Special Master for the limited purpose of developing, on an expedited basis, an evidentiary record in respect of the facts and legal issues that relate to the petitions for review[.]"

On June 18, 2008, after consideration of a voluminous record, the Special Master issued his 304–page report.[2] On an overall basis, he defined the issue as "whether there can be a blanket ban on comparative attorney advertising, particularly if it is 'comparative by implication or inference[.]'" *Report* at 61. More specifi-

---

[1] They are Jon–Henry Barr, Esq., Glenn A. Bergenfield, Esq., Cary B. Chaifetz, Esq., Maria Delgaizo Noto, Esq., Andrew J. Renda, Jr., Esq., and John S. Voynick, Jr., Esq.

[2] We are deeply indebted to Judge Fall for his dedication and hard work, and we extend our gratitude to him.

cally, he observed that the issue presented in this case is "whether a peer-review rating system that results in [the] compilation of a list of attorneys that carries a superlative title can fall into the same category [of prohibited advertisements], such that attorney advertisement of one's inclusion in that list can be considered as non-misleading and not deceptive." *Id.* at 71–72.

As a starting point, the Special Master canvassed the legal landscape in respect of the regulation of attorney advertising. Starting with *Bates v. State Bar of Arizona,* 433 *U.S.* 350, 97 *S.Ct.* 2691, 53 *L.Ed.*2d 810 (1977), he concluded that "advertising by attorneys [is] a form of commercial speech protected by the First Amendment and may not be subjected to blanket suppression[.]" *Report* at 54. That said, the Special Master highlighted that " '[a]dvertising that is false, deceptive, or misleading of course is subject to restraint[,]' " noting, at the same time, that " 'advertising claims as to the quality of services . . . are not susceptible of measurement or verification; accordingly, such claims may be so likely to be misleading as to warrant restriction.' " *Id.* at 54–55 (quoting *Bates, supra,* 433 *U.S.* at 383, 97 *S.Ct.* at 2709, 53 *L.Ed.*2d at 835).

Referencing precedent involving the constitutionality of a state regulatory ban on promotional advertising by a regulated utility, the Special Master set forth the test for assessing the constitutionality of the regulation of commercial speech:

> In commercial speech cases, then, a four-part analysis has developed. At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.
>
> [*Id.* at 57–58 (quoting *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.,* 447 *U.S.* 557, 566, 100 *S.Ct.* 2343, 2351, 65 *L.Ed.*2d 341, 351 (1980)).]

The Special Master stated the applicable rule thusly: " 'regulation—and the imposition of discipline—are permissible where the particular advertising is inherently likely to deceive or where the record indicates that a particular form or method of advertising

has in fact been deceptive.' " *Id.* at 59 (quoting *In re R.M.J.,* 455 *U.S.* 191, 203, 102 *S.Ct.* 929, 937, 71 *L.Ed.*2d 64, 74 (1982)). He underscored that " 'States may not place an absolute prohibition on certain types of potentially misleading information ... if the information also may be presented in a way that is not deceptive[,]' " noting that " 'the remedy in the first instance is not necessarily a prohibition but preferably a requirement of disclaimers or explanation.' " *Ibid.* (quoting *In re R.M.J., supra,* 455 *U.S.* at 203, 102 *S.Ct.* at 937, 71 *L.Ed.*2d at 74).

Based on *In re R.M.J.,* the *Report* then distinguished between "attorney advertising that is 'inherently' misleading and that which is 'potentially' misleading[.]" *Id.* at 60. It explained that "misleading advertising may be prohibited entirely; however, if potentially misleading information can be presented in a manner that is not deceptive, an absolute prohibition is not permitted." *Id.* at 60–61. It concluded that "the requirement of a disclaimer or explanation is the preferable approach to attorney-advertising regulation that may otherwise be misleading, with any restrictions on attorney advertising being no broader than reasonably necessary to prevent deception." *Id.* at 61.

The *Report* noted that earlier decisional law then led to *Peel v. Attorney Registration and Disciplinary Commission of Illinois,* 496 *U.S.* 91, 110 *S.Ct.* 2281, 110 *L.Ed.*2d 83 (1990), which addressed advertisements of attorney certification and differentiated between " 'statements of opinion or quality and statements of objective facts that may support an inference of quality.' " *Report* at 70 (quoting *Peel, supra,* 496 *U.S.* at 101, 110 *S.Ct.* at 2288, 110 *L.Ed.*2d at 95). Once that distinction is drawn, a clear line of demarcation appears: " 'if the certification had been issued by an organization that had made no inquiry into petitioner's fitness, or by one that issued certificates indiscriminately for a price, the statement, even if true, could be misleading.' " *Report* at 70–71 (quoting *Peel, supra,* 496 *U.S.* at 101, 110 *S.Ct.* at 2288, 110 *L.Ed.*2d at 95). The *Report* then defined the logical quandary as follows:

> the extent to which quality-of-service claims in attorney advertising can be consti-
> tutionally regulated has not been addressed by the United States Supreme Court.
> Attorney advertising that extols inclusion in a listing and ranking of attorneys
> selected based on opinions of competence rendered in a peer-review survey of other
> lawyers is a quality-of-service claim. In a sense, it is the reporting of an objective
> fact, *i.e.*, inclusion on the list, yet the underlying basis of the list or ranking is
> primarily the subjective opinions of competence expressed by those peer attorneys
> polled.

[*Report* at 76 (footnote omitted).]

This analysis also finds expression within this Court's own jurisprudence, as the *Report* noted. Citing *In re Felmeister & Isaacs,* 104 *N.J.* 515, 518 *A.*2d 188 (1986), the *Report* explained that this Court, at least implicitly, has adopted the *Central Hudson* test for determining whether commercial speech is protected. *Report* at 61–62 (quoting *Felmeister, supra,* 104 *N.J.* at 532, 518 *A.*2d 188). The *Report* emphasized that, in New Jersey, "the public interest would be better served by a . . . rule requiring that all attorney advertising be predominantly informational[.]" *Id.* at 63 (quoting *Felmeister, supra,* 104 *N.J.* at 516, 518 *A.*2d 188). The Special Master repeated the warnings of *Felmeister* in respect of the difficulties inherent in defining permissible restrictions on attorney advertising:

> attorney advertising without any restrictions whatsoever might seriously damage
> important public interests, but . . . excessive restriction might harm other public
> interests equally important. The goal, as we view it, is to strike the proper
> balance, one that results in the largest net gain for the public. The effort to do so,
> however, though guided by logic, suffers from inexperience. . . . That effort is
> therefore undertaken with an open mind and a willingness to change as we learn
> more, as we learn, perhaps, of a better balance.

[*Report* at 64 (quoting *Felmeister, supra,* 104 *N.J.* at 517–18, 518 *A.*2d 188).]

Applying the *Felmeister* analysis, the *Report* explained that "the content of the advertisement should be related to criteria that would assist the consumer in his or her selection of an attorney," and that "of principal importance to a consumer seeking legal services should be the performance of attorneys and the quality of the services they render." *Id.* at 66. In that context, the *Report* summed up "the issue here [as] whether the type of quality information most needed by consumers can be conveyed through

attorney advertising, while at the same time not being misleading or deceptive to the public." *Id.* at 68.[3]

The *Report* then focused directly on New Jersey's rule of professional responsibility governing attorney advertising, *RPC* 7.1, which provides as follows:

(a) A lawyer shall not make false or misleading communications about the lawyer, the lawyer's services, or any matter in which the lawyer has or seeks a professional involvement. A communication is false or misleading if it:

(1) contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading;

(2) is likely to create an unjustified expectation about results the lawyer can achieve, or states or implies that the lawyer can achieve results by means that violate the Rules of Professional Conduct or other law;

(3) compares the lawyer's services with other lawyers' services; or

(4) relates to legal fees other than:

(i) a statement of the fee for an initial consultation;

(ii) a statement of the fixed or contingent fee charged for a specific legal service, the description of which would not be misunderstood or be deceptive;

(iii) a statement of the range of fees for specifically described legal services, provided there is a reasonable disclosure of all relevant variables and considerations so that the statement would not be misunderstood or be deceptive;

(iv) a statement of specified hourly rates, provided the statement makes clear that the total charge will vary according to the number of hours devoted to the matter, and in relation to the varying hourly rates charged for the services of different individuals who may be assigned to the matter;

(v) the availability of credit arrangements; and

(vi) a statement of the fees charged by a qualified legal assistance organization in which the lawyer participates for specific legal services the description of which would not be misunderstood or be deceptive.

(b) It shall be unethical for a lawyer to use an advertisement or other related communication known to have been disapproved by the Committee on Attorney Advertising, or one substantially the same as the one disapproved, until or unless modified or reversed by the Advertising Committee or as provided by Rule 1:19–3(d).

[RPC 7.1.] [4]

---

[3] *Felmeister* was the genesis of the Committee on Attorney Advertising, the author of *Opinion 39*. *Report* at 68 (quoting *Felmeister, supra,* 104 *N.J.* at 548–51, 518 *A.*2d 188).

[4] *RPC* 7.2(a), which also is relevant here, allows attorney advertisements provided they are "predominantly informational[,]" do not use "drawings, ani-

The *Report* then compared *RPC* 7.1 with the model rule promulgated by the American Bar Association (*Report* at 77–81), those jurisdictions that have adopted the use of disclaimers in lieu of a per se ban (*Report* at 82–83), and *RPC* 7.1's counterparts in Arizona (*Report* at 90–96), Virginia (*Report* at 96–101), Michigan (*Report* at 101–07), Iowa (*Report* at 107–11), Connecticut (*Report* at 111–25), North Carolina (*Report* at 125–29), Tennessee (*Report* at 129–30), Delaware (*Report* at 130–36), Pennsylvania (*Report* at 136–40), and New York (*Report* at 140–48).

From that comparative analysis, the *Report* concluded that

state bans on truthful, fact-based claims in lawful professional advertising could be ruled unconstitutional when the state fails to establish that the regulated claims are actually or inherently misleading and would thus be unprotected by the First Amendment commercial speech doctrine. Clearly, mere consumer unfamiliarity with a privately[ ]conferred honor or designation does not establish that advertising such honor or designation is actually or inherently misleading so long as the honor or designation is actually issued by a legitimate professional organization with verifiable criteria that are available to consumers.

[*Report* at 149.]

The remainder of the *Report* is dedicated to an analysis of the methodologies used to rate lawyers either as "Super Lawyers" (*Report* at 150–224) or "Best Lawyers in America" (*Report* at 224–50), or as rated lawyers by Martindale–Hubbell (*Report* at 250–68). The *Report* also summarized the expert reports received (*Report* at 268–87), and the opposing briefs of amicus curiae the Federal Trade Commission and the Supreme Court Board on Attorney Certification (*Report* at 287–93).

The *Report* concluded that

[t]hose states [that] have addressed the same issues in this matter have permitted comparative and quality-of-services advertising by lawyers, usually construing such advertising to be an implied comparison with the services of lawyers not contained on the listings, but finding there is either a subjective or objective basis for that comparison that can be verified by a disclosure and an analysis of the underlying peer-review rating methodology, often imposing the additional requirement of a

---

mations, dramatizations, music, or lyrics[,]" and do not "rely in any way on techniques to obtain attention that depend upon absurdity and that demonstrate a clear and intentional lack of relevance to the selection of counsel[.]"

disclaimer designed to place these peer-review attorney rating lists in proper perspective for the consumer.

[*Report* at 295.]

It recommended what it describes as twelve "regulatory components ... extracted from [the advertising decisions of other states] to provide[ ] some guidance to the Court should it elect to modify or interpret the [*RPCs* to] permit attorney advertising of one's inclusion in [the "Super Lawyers," "Best Lawyers in America" or Martindale–Hubbell] lists[.]" *Report* at 302. Those twelve "regulatory components" are:

1. The advertising representation must be true;

2. The advertisement must state the year of inclusion in the listing as well as the specialty for which the lawyer was listed;

3. The basis for the implied comparison must be verifiable by accurate and adequate disclosure in the advertisement of the rating or certifying methodology utilized for compiling the listing or inclusion that provides a basis upon which a consumer can reasonably determine how much value to place in the listing or certification; as a minimum, the specific empirical data regarding the selection process should be included (*e.g.*, in a peer-review methodology, the number of ballots sent and the percentage of the ballots returned....);

4. The rating or certifying methodology must have included inquiry into the lawyer's qualifications and considered those qualifications in selecting the lawyer for inclusion;

5. The rating or certification cannot have been issued for a price or fee, nor can it have been conditioned on the purchase of a product, and the evaluation process must be completed prior to the solicitation of any advertising, such as for a special advertising supplement in a magazine or other publication;

6. Where superlatives are contained in the title of the list itself, such as here, the advertising must state and emphasize only one's *inclusion* in the *Super Lawyers* or *The Best Lawyers in America* list, and *must not* describe the attorney as being a "Super Lawyer" or the "Best Lawyer;"

7. Likewise, claims that the list contains "the best" lawyers or, *e.g.*, "the top 5% of attorneys in the state," or similar phrases are misleading, are usually factually inaccurate and should be prohibited;

8. The peer-review or certification methodology must contain proper usage guidelines that embody these requirements and must be adhered to in the advertisement;

9. The advertising must be done in a manner that does not impute the credentials bestowed upon individual attorneys to the entire firm;

10. The peer-review or certification methodology must be open to all members of the Bar;

11. The peer-review rating methodology must contain standards for inclusion in the lists that are clear and consistently applied; and

12. The advertisement must include a disclaimer making it clear that inclusion of a lawyer in a Super Lawyers or The Best Lawyers in America list, or the rating of an attorney by any other organization based on a peer-review ranking is not a designation or recognized certification by the Supreme Court of New Jersey or the American Bar Association.

[*Report* at 302–03 (emphasis in original).]

Five sets of written comments on the Special Master's Report were submitted; they claim as follows:

New Jersey Monthly, LLC ("Super Lawyers") asserts that *RPC* 7.1(a)(3) cannot be read as a blanket prohibition on comparative advertising. It argues that consumers are better served by competition for recognition among lawyers, as that is the most reliable source of information on legal services, and that excessive disclosure requirements are counterproductive. It claims that *Opinion 39* "is replete with other constitutional infirmities," namely, it restricts a consumer's right to information, it suppresses attorneys' free expression rights, it suppresses a free press, and it restrains fair competition. It recommends that comparisons should be allowed if substantiated and, in that regard, that *Opinion 39* suppresses the free flow of verifiable information.

Key Professional Media, Inc. (also "Super Lawyers") claims that "Super Lawyers" provides valuable information to consumers and is not misleading. It asserts that *Opinion 39* violates an attorney's right to advertise bona fide third-party accolades. It urges that, if some regulation is permissible, disclosures or disclaimers nevertheless should not be required. It concludes by asserting that *Opinion 39* impermissibly burdens or dictates editorial content.

Woodward–White, Inc. ("The Best Lawyers in America") notes that *Opinion 39* correctly observes that a blanket ban on advertising is unconstitutional. That said, it accuses *Opinion 39* of unfairly burdening "Best Lawyers" while ignoring other attorney rating entities. It claims that *Opinion 39* failed to demonstrate that the "Best Lawyers" advertisements "created an unjustified

expectation about results a lawyer can achieve" and that *Opinion 39's* interpretation of *RPC* 7.1(a)(3) cannot stand as it is an unconstitutional prohibition of commercial speech. It closes by asserting that the imposition of "regulatory components" on any attorney advertising must be narrowly tailored.

LexisNexis, a division of Reed Elsevier, Inc. ("Martindale–Hubbell"), observes that its methodology was approved by the *Report* and, hence, it is not adversely affected by it. It notes, however, that to the extent *RPC* 7.1 must be amended, its restrictions should extend only as far as prohibiting false and misleading advertising.

The Attorney General, as counsel to the Committee, submitted nine comments in respect of both the *Report* and in response to the above referenced comments by the parties and intervenors. According to the Attorney General, (1) the *Report* does not conclude that the Committee misinterpreted *RPC* 7.1; (2) the issue before the Court is limited to whether the designations addressed by the Committee—whether a lawyer is a "Super Lawyer" or a "Best Lawyer"—are misleading, and not whether any system of attorney ranking or rating is misleading; (3) given the uniqueness of New Jersey's *RPC* 7.1, reference to similar rules elsewhere is neither dispositive nor helpful; (4) the criticism that "Super Lawyers" or "Best Lawyers" have been singled out for disparate treatment is incorrect; (5) the *Report* failed to properly weigh the expert opinion tendered by and relied on by the Committee; (6) the *Report* fails to set forth the criteria used to gauge the ratings systems used by "Super Lawyers," "Best Lawyers," and Martindale–Hubbell and, hence, there is no factual basis to support any conclusions thereon; (7) the mere fact that "Super Lawyers" and "Best Lawyers" allow only those so selected to advertise that designation for a fee is in and of itself misleading as it is the equivalent of indiscriminately selling certifications; (8) the advertisements concerning "Super Lawyers" and "Best Lawyers" designations that precede *Opinion 39* are the best evidence of the ills those designations generate; and, finally, (9) if *RPC* 7.1

is interpreted differently or otherwise amended, the *Report's* recommendations should be followed and the selection methodologies used, in detail, must be disclosed.

## II.

■ We have reviewed the *Report* and the submissions of all parties, intervenors and amici, and we concur with the Special Master's analysis and conclusion that "state bans on truthful, fact-based claims in lawful professional advertising could be ruled unconstitutional when the state fails to establish that the regulated claims are actually or inherently misleading and would thus be unprotected by the First Amendment commercial speech doctrine." *Report* at 149. That conclusion mandates that *Opinion 39* be vacated, as it does not provide the carefully nuanced analysis that informs the Special Master's *Report.*

■ That said, we acknowledge that *Opinion 39's* shortcomings are the inevitable result of the plain language of *RPC* 7.1(a)(3) (prohibiting comparative advertising statements) and, to a lesser extent, *RPC* 7.1(a)(2) (prohibiting advertising "likely to create an unjustified expectation about results"). Indeed, we are persuaded that the standards set forth in the *RPCs* require review and, at least in respect of *RPC* 7.1(a)(3), modification both because of the constitutional concerns identified in the *Report* and in light of the emerging trends in attorney advertising. This process is no simple task, and it is one that does not lend itself to the present adversary/adjudicatory posture of this matter. Because this question is addressed best within the context of this Court's administrative functions, we refer *RPC* 7.1(a)(2) and (3) to the Advisory Committee on Attorney Advertising, the Advisory Committee on Professional Ethics and the Professional Responsibility Rules Committee for their concurrent consideration of a redrafted *Rule* that will take into account the policy concerns expressed by the *Rule* while, at the same time, respecting legitimate commercial speech activities. That balance must be struck in light of the analyses and recommendations presented in the *Report,* together

with such other sources and information as the Committees, acting jointly, may deem necessary and proper.

## III.

*Opinion 39* of the Supreme Court Advisory Committee on Attorney Advertising hereby is vacated. Consideration of proposed amendments or modifications to *RPC* 7.1(a)(2) and/or (3) hereby is referred jointly to the Advisory Committee on Attorney Advertising, the Advisory Committee on Professional Ethics, and the Professional Responsibility Rules Committee for expedited proceedings based on the principles outlined in the Special Master's *Report* and to which we have adverted. Any new challenge to the attorney advertising addressed in *Opinion 39* must await the completion of that administrative process and the adoption of a new or amended Rule.

*For vacation and remandment*—Justices LaVECCHIA, WALLACE, RIVERA–SOTO, HOENS, and SKILLMAN (t/a)—5.